WAGNER et al. v. J. & G. MEAKIN, Limited.[1]

(Circuit Court of Appeals, Fifth Circuit. January 24, 1899.)

No. 670.

1. FOREIGN CORPORATIONS—REGULATION BY STATE—DOING BUSINESS IN STATE.
A petition by a foreign corporation, setting up as a cause of action certain foreign bills of exchange drawn on, and accepted by, defendants, residents of Texas, and also an account for goods sold and delivered by plaintiff to defendants, does not show that plaintiff was engaged in business in Texas, within the meaning of the statute of that state, so as to require, to enable plaintiff to maintain the action, an allegation that it had previously filed a copy of its charter with the secretary of state and obtained a permit to engage in business.[2]

---

[1] Rehearing denied February 21, 1899.

[2] As to status of foreign corporations, see note to Silver Mines v. Brown, 7 C. C. A. 419.

**2. SAME—FOREIGN COMMERCE.**

> An answer in such action, alleging that defendants, as agents for plaintiff, solicited orders in Texas for merchandise to be shipped by plaintiff from England to the purchasers, would not show such facts as would render plaintiff subject to the state statute requiring foreign corporations to file a copy of their charter and obtain a permit before engaging in business in the state, as the business shown would constitute commerce between a foreign country and the United States, not subject to state regulation.

**3. CONTRACT—CONSIDERATION.**

> An answer alleging that plaintiff agreed to fill orders for merchandise obtained by defendants, but afterwards, after defendants had obtained certain orders, notified them that it would not fulfill such agreement, there being no allegation of any agreement on the part of defendants to obtain orders, nor that they had presented any to be filled prior to such notification, does not show a contract resting on any consideration, for the breach of which damages are recoverable.

In Error to the Circuit Court of the United States for the Western District of Texas.

R. L. Summerlin, Oscar Bergstrom, S. G. Newton, and W. W. Walling, for plaintiffs in error.

Thos. Haynes, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

McCORMICK, Circuit Judge. The defendant in error brought this action against the plaintiffs in error in the circuit court for the Western district of Texas. On May 7, 1897, it presented its first amended original petition, which, by the practice in that state, takes the place of its former pleading. This amendment states the plaintiff's case as follows:

"Now comes the plaintiff, J. & G. Meakin, Limited, by its attorney, and by leave of court files this its first amended original petition in lieu of its original petition filed herein on March 16, 1897, and, complaining of Adolph Wagner, Charles J. Chabot, and George A. Chabot, defendants, says: The plaintiff is a corporation duly incorporated under the laws of the United Kingdom of Great Britain and Ireland, is a citizen of said United Kingdom, and has its principal office at Hanley, county of Stafford, England, in said United Kingdom. That the defendants are citizens of the state of Texas, and reside in the county of Bexar, city of San Antonio, in the Western district of said state, and that the defendants were, at the dates hereinafter mentioned, and still are, partners in the trade, doing business under the firm name of Wagner & Chabot. That heretofore, to wit, on the 14th day of February, 1896, the plaintiff, at said Hanley, England, made a certain foreign bill of exchange of that date, directed to the defendants in their firm name, and thereby requested said defendants to pay to the order of the plaintiff, six months after said date, the sum of five hundred and ninety-three pounds eight shillings, and eight pence, for value received, and delivered the bill of exchange to the defendants, who afterwards accepted the same, payable at San Antonio; by reason whereof the defendants became liable and promised to pay the plaintiff the sum of money specified in said bill of exchange, according to the tenor and effect thereof and their said acceptance. That afterwards, to wit, on July 15, 1896, before said bill of exchange became due, the defendants requested of plaintiff an extension of four months, because they said collections were poorer than ever before in their experience, and their cash resources were therefore rather tight; the defendants promising, if granted said extension, to pay interest. That the plaintiff granted said extension, and duly presented said bill of exchange on the 17th day of De-

cember, 1896, for payment, but the defendants refused to pay the same; whereupon it became necessary to have the same protested for nonpayment, which the plaintiff caused to be done, and paid therefor, and for the no- tices of protest, four dollars, whereby the defendants became liable and promised to pay the plaintiff said sum of $4. That, to wit, on the 30th day of May, 1896, the plaintiff, at said Hanley, England, made another foreign bill of exchange, of that date, directed to the defendants in their firm name, and thereby requested the defendants to pay to the order of the plaintiff, six months after said date, the sum of two hundred and forty pounds and four shillings, for value received, and delivered said bill of exchange to the defendants, who afterwards accepted the same. in San Antonio; by reason whereof the defendants became liable and promised to pay plaintiff the sum of money specified in said bill of exchange, according to the tenor and effect thereof and their said acceptance. That afterwards, to wit, on the 23d of November, 1896, the plaintiff presented said bill of exchange to the defend- ants for payment, but the defendants refused to pay the same; whereupon it became necessary to have the same protested for nonpayment, which the plaintiff caused to be done, and paid therefor, and for the notices of protest, four and one-half dollars, whereby the defendants became liable and prom- ised to pay plaintiff said sum of $4.50. That the plaintiff is still the owner and holder of the two said bills of exchange. That, to wit, on July 1, 1896, the plaintiff, at the special instance and request of the defendants, sold and delivered to them certain goods, wares, and merchandise, more particularly described in the account hereto annexed and made a part hereof, which ac- count is verified under oath, and that the defendants promised to pay the plaintiff, six months after said date, the several prices charged for the sev- eral items in said account, as well as the inland carriage to Liverpool; the Liverpool charges, insurance, and interest, as specified in said account, amount- ing in all to two hundred and eighty-eight pounds, twelve shillings, and five pence. That each pound mentioned in said bills of exchange and in said verified account is equivalent to $4.90 in lawful money of the United States; each shilling, to $24\frac{1}{2}$ cents; and each penny, to $2\frac{1}{24}$ cents. That, therefore, the amount due the plaintiff upon the bill of exchange first above set out, including protest fees, is two thousand nine hundred and eleven and $^{82}/_{100}$ dollars in lawful money of the United States, with legal interest; and the amount due the plaintiff upon the second bill of exchange above set out, in- cluding protest fees, is, in lawful money of the United States, eleven hundred and eighty-one and $^{48}/_{100}$ dollars, with legal interest; and the amount due the plaintiff upon said verified account is. in lawful money of the United States, fourteen hundred and fourteen and $^{24}/_{100}$ dollars. That the aggre- gate amount due the plaintiff from the defendants is $5,507.54, with legal interest. The said bills of exchange and said account are long since due, and, though often requested, the defendants refuse to pay the same, or any part thereof, to plaintiff's damage ten thousand dollars."

And thereupon it prayed for judgment against each of the defend- ants, and against the firm of Wagner & Chabot, for its debt, with interest and for costs.

The defendants excepted to the pleadings of the plaintiff, on the ground that it appears from the plaintiff's petition that it is a foreign corporation, doing business in the state of Texas, and was doing busi- ness at the time the cause of action accrued; that it does not appear that the plaintiff corporation has filed its articles of incorporation, and obtained a permit to do business, in Texas, as provided by law; nor does it appear from the petition that the transaction set out and sued upon by the plaintiff constituted either interstate or foreign commerce.

Subject to the action of the court on the foregoing exception, the defendants answered, tendering the general issue, and, further spe- cially answering, say:

"That in the matters and things set out in plaintiff's petition, and at the times thereof, the plaintiff was a foreign corporation, incorporated under and by virtue of the laws of the kingdom of Great Britain, and was doing business in the state of Texas, through the defendants herein as its agents, and that the business transacted and sued upon by plaintiff was business transacted in the state of Texas in violation of the laws thereof, and that the plaintiff had not then filed with the secretary of state of the said state of Texas its articles of incorporation, and had obtained no permit to do business in the state of Texas, and that, therefore, it cannot recover for the matters and things set out in said petition. Further answering, these defendants say that, during the years 1894, 1895, and 1896, they were wholesale dealers in, and manufacturers' agents of, china, crockeryware, and earthenware of all descriptions, located in the city of San Antonio, and carrying on such business through traveling representatives in the state of Texas and in the republic of Mexico. That during the years 1894 and 1895 the defendants purchased from the plaintiff its different classes of manufactured crockery, ironstone, china, and earthenware, upon the agreement and condition that the defendants would and should take orders from retailers of such goods in the state of Texas and the republic of Mexico, as well as goods desired by themselves for use in their retail business in the city of San Antonio. That the plaintiff should ship said goods, wares, and merchandise direct from its place of manufacture, from Hanley, in the county of Staffordshire, England, by way of New Orleans, to San Antonio, Texas. All goods intended for shipment on orders taken by the defendants to be crated separate, and marked as the defendants desired, so as to enable the defendants to break bulk at New Orleans, and ship them in car-load lots, at a common through rate, to all common points in Texas where such orders had been taken. All such shipments to be billed direct to the defendants, and to be paid for by the defendants at the prices set out in the schedule hereto attached, marked Exhibit No. 13. In addition to which prices to be paid to the plaintiff, the defendants were to pay all costs of transportation and delivery to the consignees. In accordance with which agreement these defendants, at their own cost and expense, employed traveling salesmen to solicit such orders in the state of Texas and the republic of Mexico, and that all such orders so taken were filled, the goods packed in crates, marked, and shipped as directed by the defendants. That in the latter part of the year 1895 the plaintiff desired to discontinue its contract and agreement to fill all orders taken by the defendants in the state of Texas, whereupon these defendants sent their agent, Mr. G. R. Spielhagen, to the plaintiff's place of business, at Hanley, England, to arrange with it for the continuation of its contract of 1894 and 1895. That the said G. R. Spielhagen did go to England, with a view of securing such extension of the contract between themselves and the plaintiff, and on or about the 1st of November the plaintiff entered into a contract with the defendants, through its agent and business manager, J. H. Meakin, to extend the contract for and during the year 1896,—that is to say, that these defendants should solicit such orders for goods in the state of Texas and the republic of Mexico, have the goods manufactured by plaintiff, the plaintiff agreeing to fill and ship all such orders, and to pack such goods in crates as might be provided in said orders, and to be marked for specification, so as to enable the defendants to break bulk at New Orleans, and then transport them in car-load lots to the purchasers at such points in Texas, and the defendants to pay therefor the prices set out in the schedule hereto attached, marked Exhibit No. 13, together with the freight and expense for shipping and delivering to the consignees, the defendants to have, as compensation therefor, the difference in such contract price and the expenses and the price at which the goods were sold to such customers; the plaintiff also agreeing to furnish, and did furnish, the defendants samples of its goods so manufactured, for the use of defendants' salesmen in taking such orders, and also agreed to furnish the defendants not less than thirty car loads of said goods to fill such orders as the defendants then had or would make during the season; of which contract these defendants were immediately notified by their said agent, and these defendants, by letter dated the 30th day of November, 1895, and other letters written to the plaintiff, acknowledged the making of such contract,

indicating their satisfaction therewith. Such contract entered into by and between the plaintiff and the defendants was a verbal contract, and recognized in their correspondence. That immediately thereafter—that is to say, about the 1st of January, 1896—the plaintiff did forward to the defendants such assortment of samples of goods to be sold by them, and, in pursuance of such agreement for the shipment and delivery of such samples, the defendants did immediately employ salesmen to go to different parts of the state of Texas, as well as to the republic of Mexico, to solicit such orders and canvass such goods; it being understood, by and between the parties, plaintiff and defendants, that the defendants would employ and should solicit orders in accordance with said agreement. That two salesmen were employed and canvassed for two months, and one salesman was employed and canvassed for one month. That the reasonable value of the services of such salesmen, and the amount paid by the defendants to them, was one hundred and twenty-five ($125.00) dollars each, and seven and $^{50}/_{100}$ ($7.50) dollars per day for expenses each. That notwithstanding the contracts as entered into by and between the plaintiff and the defendants, as heretofore set out, the plaintiff, at the instance of competing crockery dealers in the United States, withdrew from its said contract with the defendants, and on or about the 20th day of February, 1896, the defendants received written notice from the plaintiff that it would no longer fill orders for the direct shipment of goods to the defendants' customers in Texas. That, upon receipt of said notice, these defendants sent out notices to their traveling salesmen to discontinue taking such orders, which notices reached their salesmen in the different parts of Texas between the 10th and 20th of March, 1896, after which time the defendants' said salesmen took no further orders. That during such time,—that is to say, from the 1st day of January, 1896,—and up to the time such notices were received by the salesmen, they had, in accordance with said contract, taken large orders for the goods manufactured by the plaintiff, and which were to be shipped to the different parties ordering the same in the state of Texas. That during said time they had sold twelve car loads of such goods, and file herewith a complete statement of the goods so sold, the parties to whom sold, and the prices at which they were sold are hereto attached, marked Exhibits Nos. 1 to 12, which are hereby referred to and prayed to be taken as a part of this answer. That such orders were all forwarded to the plaintiff to be filled in accordance with said contract, but the plaintiff, after receiving such orders taken before the receipt of notice of its withdrawal from the contract, failed and refused to fill the same, to these defendants' great damage. That, if such orders had been shipped as required by said contract, these defendants would have been compelled to pay the freight and other expenses of delivery of said goods, which amounted to the following percentage on the different kinds of goods named in said orders, to wit: On white granite, 60 per cent. on English cost; plain print, 56½ per cent. on English cost; enameled, traced, 56½ per cent. on English cost; enameled, no gold, 56½ per cent. on English cost; gold illuminated, 56½ per cent. on English cost; enameled, full gold, 56½ per cent. on English cost. That the difference between the prices which these defendants agreed to pay to plaintiff for such goods and the price for which they were sold, after deducting all expenses of freight and delivery, is three thousand seven hundred and eighty-six and $^{18}/_{100}$ ($3,786.18) dollars, which profit these defendants would have realized, and is the sum in which they have been damaged on account of the plaintiff's failure to comply with its said contract to ship said goods. That all of said purchasers and customers were solvent, ready, willing, and able to pay for said goods had they been delivered as per contract. That the bills of exchange set out in plaintiff's petition and sued upon, as well as the open account therein set out, were executed to the plaintiff, and the goods purchased from the plaintiff, in pursuance of, and in part carrying out, the contract set out between the plaintiff and the defendants requiring such sales and shipments of goods, and are therefore a part and parcel of the transaction between the plaintiff and the defendants as set out and involved in plaintiff's said petition, and for breach thereof as set out in this answer. That the defendants were unable to obtain the crockery and goods to be manufactured by the plaintiff, for the purpose of filling said orders, from any other

source, and same could not be obtained in the market, and therefore these defendants were damaged in the said sum so above set out. These defendants further aver and represent that if the plaintiff had not violated the contract, and withdrawn therefrom, these defendants, in pursuance thereof, could have sold in the state of Texas at least thirty car loads of the goods so to be manufactured by the plaintiff, and would have realized thereon a net profit of ten thousand dollars, and by reason thereof these defendants have been damaged in the further sum of ten thousand dollars. Further answering, these defendants say that the plaintiff is a foreign corporation, and has no property in the state of Texas, nor, so far as these defendants know, in the United States of America, subject to execution. And thereupon they pray for judgment over against the plaintiff for the amount of the damages alleged, together with interest, and for costs of suit."

To this pleading of the defendants, the plaintiff excepted, because it does not show any valid contract between the plaintiff and the defendants the breach of which would give the defendants cause of action for damages; that, plaintiff's suit being founded on a certain liquidated demand, the answer sets up a claim for unliquidated damages, and the allegations do not show that the claim arises out of, or is incident to or connected with, the plaintiff's cause of action; that so much of the answer as alleges that the appointment of the defendants as special agents of the plaintiff was through a correspondence by mail is bad, because the dates of the correspondence making such appointment, and the substance thereof, should be stated, or the letters should be attached, so as to apprise plaintiff of the proof necessary to be produced to rebut the same; that the allegation that the plaintiff has never filed a certified copy of its charter with the secretary of state of Texas, nor obtained a permit to do business in Texas, is bad, because it shows that, if the plaintiff had been doing business in Texas, all such business was done through the defendants, as its agents, and it further appears from the answer that the plaintiff is subject to the act of congress to regulate commerce, and, under such allegation, it was not necessary for the plaintiff to file a copy of its charter nor to obtain a permit to do business; that the claim on account of the employment, salary, and expenses of salesmen is not good, because if there had been a breach of contract, as the defendants allege, the plaintiff would not be liable for such salary and expenses, which are not averred to have been within the contemplation of the parties at the time of the alleged contracting; that the claims for loss of profits are not well made, because the answer shows that the profits claimed are too remote, uncertain, indefinite, and speculative, and such as are not shown to have been within the contemplation of the parties at the time of the alleged contracting. The plaintiff further excepts to that part of the answer which alleges that the defendants sold to parties in Texas certain goods, and to Exhibits A and B attached to the answer, because neither the allegations nor the exhibits show the kind or quantity of goods sold to each party, nor the dates when sold, so that the plaintiff cannot properly prepare to meet same with proof.

The case came on for trial, and, after full hearing on the respective exceptions of the parties to the pleadings of the adversary, the circuit court overruled the exceptions of the defendants to the pleadings of the plaintiff, and sustained all of the exceptions of the plain-

tiff to the answer of the defendants, and charged the jury to find their verdict in favor of the plaintiff. There was a verdict for the plaintiff, and judgment thereon.

The first error assigned is that the court erred in overruling the defendants' special exception to the plaintiff's petition. Under this assignment, counsel for the plaintiffs in error contend that, when a suit is brought by a foreign corporation against a defendant, the petition is fatally defective if it fails to allege a compliance with the laws of the state giving to corporations the right to maintain suits, when there is a law in force in the state providing that no suits shall be maintained without such compliance, and, in support of that contention, state that the petition of the plaintiff shows that it is a foreign corporation doing business in Texas, and does not allege that it had obtained a permit to do business in the state of Texas.

The provisions of the Revised Statutes of Texas of 1895 are relied on, as follows:

"Art. 745. Hereafter any corporation for pecuniary profit except as hereinafter provided, organized or created under the laws of any other state, or of any territory of the United States, or of any municipality of such state or territory, or of any foreign government, sovereignty, or municipality, desiring to transact business in this state or solicit business in this state, or establish a general or special office in this state, shall be and the same is hereby required to file with the secretary of state a duly-certified copy of its articles of incorporation, and thereupon the secretary of state shall issue to such corporation a permit to transact business in the state. If such corporation is created for more than one purpose the permit may be limited to one or more purposes; and such corporation on obtaining such permit, shall have and enjoy all the rights and privileges conferred by the laws of this state on corporations organized under the laws of this state, and shall be authorized and empowered to hold, purchase, sell, mortgage, or otherwise convey such real estate and personal estate as the purposes of such corporation may require, and also to take, hold, and convey such other property, real, personal or mixed, as may be requisite for such corporation to acquire in order to obtain or secure the payment of any indebtedness or liability due, or which may become due or belonging to the corporation: provided, that if such corporation so obtaining a permit to do business in this state shall acquire any real estate under the powers herein conferred, it shall alienate all real property so acquired by it not necessary for the purposes of such corporation, within fifteen years from the time of acquisition; and, provided, further, that such corporation shall alienate all real estate acquired by it for the purpose of such corporation, within fifteen years from the expiration of the time for which the permit is issued, or if such permit be renewed or such corporation be otherwise authorized to carry on business in this state, then such corporation shall alienate such real estate within fifteen years after the expiration of the time for which such permit is extended, or it is so authorized to carry on' business in this state; and provided, further, that if such corporation shall cease to carry on business in this state it shall alienate all such real estate so acquired by it, within fifteen years after the time it shall so cease to carry on business in this state.

"Art. 746. No such corporation can maintain any suit or action, either legal or equitable, in any of the courts of this state upon any demand, whether arising out of contract or tort, unless at the time such contract was made or tort committed the corporation had filed its articles of incorporation under the provisions of this charter in the office of the secretary of state for the purpose of procuring its permit."

The cases of Paul v. Virginia, 75 U. S. 168, Horn Silver Min. Co. v. State, 143 U. S. 305, 12 Sup. Ct. 403, and Huffman v. Investment Co. (Tex. Civ. App.) 36 S. W. 306, are cited by the plaintiffs in error

in support of their proposition and statement. We have carefully examined and considered the cases just cited, and find nothing in any of them to support the contention that the dealing of the plaintiff, as shown in its petition, brings it within the meaning of the terms of the statute of the state of Texas above set out. The allegations of the plaintiff's petition show that it is a citizen of the United Kingdom of Great Britain and Ireland, and has its principal office at Hanley, county of Stafford, England; that at Hanley, England, it made the certain foreign bills of exchange, addressed to the defendants and accepted by them, declared on in the petition, and, at the special instance and request of the defendants, had sold and delivered to them certain goods, etc., mentioned in the account sued on. There is nothing in this, nor in the whole petition, to show that the plaintiff was engaged in business in the state of Texas, within the meaning of the statute cited.

The fifth assignment presents substantially the same question in another form. It is to the effect that the court erred in sustaining the plaintiff's exception to that part of the defendants' answer which alleges that the plaintiff, though a foreign corporation doing business in Texas, had never filed a copy of its charter with the secretary of state of Texas, and obtained a permit to do business in that state, and that the plaintiff should not be permitted to maintain this suit because, under the allegations of the answer, it appeared that, if the plaintiff had been doing business in that state, all such business was done through defendants as its agents, and it further appears from the answer that the plaintiff is subject to the act of congress regulating commerce, and under such allegations it was not necessary for the plaintiff to file a copy of its charter and obtain such permit. It is clear, from the whole answer, that it nowhere avers that the plaintiff was doing business in Texas, or soliciting business in Texas, except with and through the defendants. The defendants call themselves in their pleadings, or, rather, assume in their answer that they were, the agents of the plaintiff in the dealings that they had with it. But it does not so appear to us from our construction of the terms of the answer; and, if it was so, the nature of their dealings with and through these agents constituted foreign commerce, or commerce between a foreign country and the United States, within the authority of Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592; Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. 1380; Asher v. Texas, 128 U. S. 129, 9 Sup. Ct. 1; Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681; Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Allen v. Buggy Co., 91 Tex. 22, 40 S. W. 714. We conclude that the first and fifth errors assigned are not well taken.

The second error assigned is that the court erred in sustaining the plaintiff's exception to the answer of the defendants on the ground that the defendants have not alleged any valid contract between themselves and the plaintiff, and therefore cannot claim damages for the breach of the alleged contract. The answer shows that, during the years 1894, 1895, and 1896, the defendants were wholesale dealers and manufacturers' agents of china and crockeryware of all descriptions, doing business at San Antonio, Tex.; that in the years 1894 and

1895 they purchased of the plaintiff goods for use in their retail business and for sale to other retail dealers in Texas and Mexico; that the plaintiff agreed to ship the goods, by way of New Orleans, to San Antonio, crating, separating, and marking the goods so as to enable the defendants to break bulk at New Orleans, and forward the goods to their several destinations; that shipments were to be billed direct to the defendants at San Antonio, who were to pay the prices set out in Exhibit No. 13 attached to the answer, and all costs of transportation and delivery; that all orders were filled, the goods packed, marked, and shipped, as directed by the defendants, until the latter part of the year 1895, when the plaintiff desired to discontinue to fill orders taken by the defendants in the state of Texas, whereupon the defendants sent their agent to the plaintiff's place of business, at Hanley, England, to arrange with the plaintiff for the continuance of their dealings. Here the answer begins to use the word "contract," but no previous contract is shown to have existed,—only a kind of historical statement of the dealings between the parties prior to November 1, 1895. The answer then proceeds: That, with a view of securing an extension of the contract between themselves and the plaintiff, the agent went to its place of business in England, and about the 1st of November it entered into a contract with the defendants, through its agent and business manager, J. H. Meakin, to extend the contract for and during the year 1896,—that is to say, that the defendants should solicit such orders for goods in the state of Texas and the republic of Mexico, have the goods manufactured by the plaintiff, it agreeing to fill and ship all such orders, and to pack such goods in crates as might be provided in the orders, and to be marked for specification, so as to enable the defendants to break bulk at New Orleans, and then to transport them in car-load lots to the purchasers at such points in Texas, and the defendants to pay therefor the prices set out in Schedule No. 13, attached to the answer; that the plaintiff agreed to furnish the defendants not less than 30 car loads of goods to fill such orders as the defendants then had or would make during the season. But the answer does not show that at that time the defendants engaged to make any orders, or submitted to the plaintiff any orders for its acceptance, or that the defendants had obtained and submitted to the plaintiff any such orders for its acceptance, much less which it had accepted, prior to the 20th day of February, 1896, when the defendants received written notice from the plaintiff that it would no longer fill orders for the direct shipment of goods to the defendants' customers in Texas. Here it is well to observe that the first of the foreign bills of exchange declared on in the plaintiff's petition bears date the 14th of February, 1896, just seven days before the date on which the answer shows the defendants to have received written notice of the plaintiff's withdrawal of its consent to make such shipments to the defendants. This bill of exchange was subsequently accepted by the defendants, and on the 15th of July, 1896, they asked and obtained an extension of four months on the same. The second bill of exchange, which was accepted by the defendants, bears date the 30th of May, 1896. These acceptances, being fully set out in the plaintiff's petition as the founda-

tion, in part, of its action, are not disputed, or in any way qualified, by any part of the defendants' answer. Therefore, waiving any question as to the vague and indefinite manner in which the alleged contract is averred in the pleadings, it seems clear to us that there is no valid consideration shown in the defendants' answer to support any promise on the part of the plaintiff to ship any goods to the defendants. We conclude that the second error assigned is not well taken. Morrow v. Express Co. (Ga.) 28 S. E. 998.

In view of the conclusions we have announced as to first, second, and fifth errors assigned, the other rulings of the court become immaterial. The judgment of the circuit court is therefore affirmed.