BRUNER ET AL VS KANSAS MOLINE PLOW CO.

Opinion rendered Sept. 26, 1907.

(104 S. W. Rep. 816).

1. *Change of Venue—Credibility of Witnesses.*

It is for the court to determine whether or not witnesses supporting a motion for change of venue, because of prejudice against the party moving therefor, are credible persons.

2. *Contract of Sale—Delivery—Evidence.*

Where a contract of sale provided that goods be delivered at warehouse of seller and further that seller was not responsible for freight, the buyer must show delay in delivery at the warehouse as it is not sufficient to prove that goods were delayed in their arrival at destination.

3. *Agent and Principal—Agents Authority.*

Where a contract of sale provided for the delivery of goods at the warehouse of the seller and declared that only agreements contained in the contract were binding, statements of the agent of seller not included in the contract were of no effect.

4. *Foreign Corporations.*

A foreign corporation procured, through their salesman, a contract for the purchase of goods in Oklahoma. Contract provided that it must be approved by the corporation at its home office and that goods should be delivered to buyer at that place. Contract was duly approved. It was held that the transaction was not doing business in Oklahoma, in accordance with the statute that an agent on whom service might be had, should be located in that territory.

Appeal from the United States Court for the Southern District of the Indian Territory; before Justice J. T. Dickerson, May 1, 1906.

Action by the Kansas Moline Plow Company against H. S. Bruner and others. From a judgment for plaintiff defendants appeal. Affirmed.

The appellee, the Kansas Moline Plow Company, brought its action against the appellants for the sum of $1,223.21

together with interest for goods, wares, and merchandise sold and delivered by appellee to the appellants at the special instance and request of said appellants, and attached to their complaint an itemized account. An order of attachment was also issued by the appellee, and certain property of the appellants seized under the order. The appellants, answering, admit the purchase of the property described in appellee's complaint, but allege that at the time of purchase of said machinery and implements it was agreed in writing that all of said machinery should be of a certain class and character and of such material as is commonly used in the manufacture of machinery and farming implements of that kind. They allege that at the time of the sale of said goods by appellee to appellants it was understood between them that the appellants were engaged in the sale and contracting of farm implements of the class and character described in the contract; that all of said implements were being purchased for the sale of the spring of 1903, the same being the season in which farming implements of that character were usually sold. They allege that appellee failed and refused to deliver the goods under the terms of the contract until it was too late for them to be placed on the market by appellants. They allege further that said machinery, as delivered to them, proved to be of a different class and character than that agreed upon in the contract, it being of an inferior character, a portion of the machinery not being shipped at all; that upon receipt of the machinery and an investigation of the material used in its manufacture the appellants notified appellee that the machinery was subject to their order; and allege that subsequently the agent of the appellee visited them at Waurika for the purpose of adjusting their differences and agreed that the property should be and remain the property of the Kansas Moline Plow Company, and that appellants were to sell as much of the machinery as they could and hold the funds subject to the order of appellee. They further allege that it was agreed

between the parties that appellees were to furnish the appellant an experienced machinist to place said machinery in condition for farm work. This they allege they failed and refused to do. They further plead that the goods were sold both in Oklahoma and Indian Territory; that appellee had not at that time or subsequent thereto a duly appointed agent under the laws of Oklahoma upon whom service might be had, attaching a copy of the territory laws of Oklahoma governing foreign corporations to their answer. Application for a change of venue was made by appellants, and overruled. To the action of the trial court in overruling same the appellants reserved their exceptions. A motion for change of venue was duly filed and overruled, and exception saved. The case was tried to a jury, which was peremptorily instructed to return a verdict for the plaintiff.

*Gilbert & Bond*, for appellants.

*McKnight & Haskett* and *E. E. Morris*, for appellee.

CLAYTON, J. (after stating the facts as above). There are 27 specifications of error in the assignment. The second is as follows: "Error of court in overruling and denying the application of plaintiff in error for a change of venue." The motion and supporting affidavit are as follows: "Now comes the defendants in the above-styled cause and moves the court to grant them a change of venue in the above cause for the reason that the prejudice against the defendants in the division of the Southern district of the Indian Territory in which said cause is pending is so great that the defendants cannot obtain a fair and impartial trial in said action, and defendants except to Ardmore. Gilbert & Bond, Attorneys for defendants. E. J. Kelly, being duly sworn on oath states that he is one of the defendants in the above-styled and entitled cause, and the several matters and things set forth in the foregoing motion are true. E. J. Kelly. Subscribed, etc.   *   *   *   Before me, the undersigned authority, this day personally ap-

peared D. P. Sturgeon and C. B. Arnold who being duly sworn on oath state that they are acquainted with the defendants in the above and foregoing cause, that they believe the defendants cannot obtain a fair and impartial trial in the Ryan division of the Southern district of the Indian Territory on account of the prejudice existing there against the defendants, and affiants believe the statements contained in the foregoing motion to be true. D. P. Sturgeon, C. B. Arnold."

The motion was contested on the ground that the attesting witnesses were not credible persons, as provided by the statute. On the hearing of this contest the court examined both of the attesting witnesses, and none others, and upon their testimony overruled the motion for a change of venue, to which action of the court exception was duly saved. It was agreed that the testimony of these two witnesses was as follows: By D. P. Sturgeon, that he was 20 years of age, that he had lived for some time upon the farm of E. J. and T. B. Kelly, appellants herein, a place containing 7,000 or 8,000 acres of land; that Kelly brought the affidavit for change of venue to him and asked him to sign it; that he did not know the size of the district and never heard any other persons, except the renters on this place, say anything about the case, and did not know the boundaries of the territory returnable to the Ryan court; that he was acquainted with some of the Browns who had formerly lived on the same place, and with whom Kelly had some trouble; and that a relative of the Browns was at that time postmaster at Ryan. By C. B. Arnold, that he had not heard any one say the Kellys could not obtain a fair and impartial trial at Ryan; that he did not even know the size of the territory returnable to Ryan court. The statute requires that the witnesses shall be two credible persons; and whether they be such or not is a matter of fact for the court to determine before the order is made. If the witnesses are found to be credible, the order for a change of venue goes as a matter of

right; but if they be found to be not credible, the terms of the statute are not complied with, and the order should be refused. And in order to determine this question, the court may take proof, and we know of no rule of law exempting the attesting witnesses from testifying in the matter. But the proof must be directed to the question of their credibility, and none other. It is evident from the statements of these witnesses on their examination before the court that neither of them, especially the witness Arnold, had any knowledge of the facts to which they made affidavit. They simply swore, as a matter of accommodation possibly, to the existence of a condition about which they knew nothing, and which, in all probability, did not exist, and if this be not perjury it grazes it so closely as to be hardly distinguishable from it; and, inasmuch as the affidavit was made, if not true or rashly sworn to, for the purpose of impending the due course of procedure in a court of justice, it becomes doubly reprehensible, and stamps the witness with the brand of incredibility to such an extent as to justify a court, in the absence of other proof, in finding that they were not "credible persons." It is not possible that the statute intended that the delays an the contingent expenses to litigants and the annoyance to the courts should be had upon the affidavits of witnesses so careless of the truth; nor can it be said that they are credible persons in the sense of the statute.

The fourth to the ninth and the twentieth assignments complain of the action of the court in sustaining objections of the plaintiff to certain questions asked by the defendant of witnesses. The first question to which objection was sustained was asked the defendant Brunner: "Well, did you buy it (the goods which counsel had previously designated as 'stuff') for the season of 1903, or for some other season?" Again: "What understanding, if any, did you have with the agent of the Moline Plow Company as to the manner in which this stuff that you purchased would be sold?" And, "Was there any

understanding between yourself and this corporation about the length of time that it would take to ship those goods from storage place to town of Waurika?" And, "Did those goods arrive at Waurika in time for the spring sales?" and so on. The defendant was trying to show that because of a delay in shipping the goods he was deprived of the benefit of the spring sales. The contract of sale provided that the goods should be delivered by plaintiff to defendants at plaintiff's warehouse in Kansas City, and that plaintiff was not to be responsible for freight and no proof was offered to show that they were not promptly delivered at the warehouse in Kansas City, or that any delay was caused by plaintiff's fault. If there had been proof that the plaintiff had for an unreasonable time delayed delivery of the goods at the warehouse, this proof might possibly have been relevant. The contract was received and approved at Kansas City on the 18th of March. The goods arrived at Waurika, in Oklahoma, in the early part of April. The delay of a few days or weeks in their arrival at Waurika, in the absence of other proof, tends to show rather that the delay, if such there was, was caused by the railway company in handling the freight from Kansas City to Waurika. The plaintiff, under the contract, was not responsible nor called upon to account for that delay, and until the foundation was laid by the introduction of some proof that the delay was in the delivery of the goods at the warehouse, proof that they were late in getting into Waurika would not be relevant. The burden of proof that the delay in delivering the goods at the warehouse was on defendant, and proof that there was delay in the arrival of goods hundreds of miles away is not of itself proof of that fact. In arguing this question, counsel for appellants in their brief, say: "The defense of the appellant was that there was a failure of consideration; that the contract was brought about by false representations made by the salesman of the Moline Plow Company as to the time it would take the goods to reach

the place of storage to Kansas City and the place of storage to Waurika." This is fully answered by the terms of the contract, which, in this particular are: "(1) The goods to be delivered at the warehouse of party of the first part (plaintiff) at Kansas City, Mo.; (2) no agreements, conditions, or stipulations, verbal or otherwise, save those mentioned in this contract, will be recognized; (3) it is fully agreed by the parties hereto that the above terms of this contract, together with notices and warrants exhibited on page 2 of this contract, contain all the agreements, conditions, or stipulations between the parties hereto, and no other agreements, conditions or stipulations, verbal or otherwise, shall be recognized by either party; (4) the parties hereto have carefully considered the essential points of this contract before signing, and agree that it is both satisfactory and binding on each." There is no charge of fraud in the answer. Under this contract any statement of the agent as to the time when the goods would arrive at Waurika, not having been included in the contract, is not binding on the plaintiff, especially so when it is considered that the goods were in defendants' care, and at their risk from the time of the delivery at the warehouse, and no proof was offered of any delay up to that time.

The next error argued by defendant is: "Error of the court in refusing at request of counsel for plaintiff in error to instruct for plaintiff in error when defendant in error rested its case." This error; the twelfth, as well as the twenty-second assignment, is based upon the assumption that as the plaintiff below was a manufacturing and mercantile corporation, organized under the laws of Illinois, and doing business in the state of Kansas, and had no agent in the territory of Oklahoma upon whom to serve notice, that the contract was unenforceable. The proof shows that the goods were ordered by defendants through a salesman of plaintiff, at Waurika, Okla.; that the contract was signed at that place, but by one of its written

provisions it was not to be considered consummated until approved by the company at Kansas City. The contract was sent to that place, and there, on the 18th day of March, 1903, was finally executed by the approval of the company signed by it. The goods were to be delivered to defendant at that place. This transaction did not constitute "doing business in the territory of Oklahoma" in contravention of the statute requiring an agent to be located in that territory upon whom service could be had. Besides, a contract entered into by a salesman finally signed in a state to be executed in that state, is a contract of that state, and transactions accruing under it does not constitute a doing business in another state in the sense of the Oklahoma statute. And even if the goods were to have been delivered to the purchaser in another state, it is not, in the sense of the statute, doing business in the latter state. Wagner et al vs J. & G. Meakin, Limited, 33 C. C. A. 577, 92 Fed. 76; Supply Co. vs Mosher, 72 N. W. 117, 114 Mich. 64; Varnish Co. vs Connell, 32 N. Y. Supp. 494, 10 Misc. Rep. 553. "The procuring in New York of orders for goods by the traveling agent of a foreign corporation which orders are to be transmitted to the home office of the corporation for approval, after which the goods are to be·shipped from such office to the buyer in New York, does not constitute 'doing business in this state.' Lumber Co. vs Holbert, 39 N. Y. Supp. 432, 5 App. Div. 559; 33 C. C. A. 589, note; American Broom & Brush Co. vs Addickes, 42 N. Y. Supp. 871, 19 Misc. Rep. 36." "Act May 19, 1894 (91 Ohio Laws, 355, 356), imposing conditions precedent to the doing business in the state by foreign stock corporations other than banking and insurance corporations do not apply to foreign corporations whose business within the state consists merely in selling, through traveling agents, goods manufactured without the state and delivering them within the state." Toledo Com. Co. vs Glen Mfg. Co., 45 N. E. 197, 55 Ohio St. 217. See notes to Wagner vs J. &

34

G. Meakin, supra; Cooper Mfg. Co. vs Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137.

There are other errors assigned, but we have discussed all in which there is any merit.

We think the court did not err in peremptorily directing a verdict for plaintiff below.

Affirmed.

GILL, C. J., and TOWNSEND and LAWRENCE, JJ., concur.