## M. J. GROVE LIME COMPANY v. DORA WOLFENDEN
## M. J. GROVE LIME COMPANY *v.* JAMES WOLFENDEN

[Nos. 47, 48, October Term, 1936.]

*Decided January 13th, 1937.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Walter L. Clark* and *Roszel C. Thomsen,* with whom was *Clater W. Smith* on the brief, for the appellant.

*Philander B. Briscoe,* with whom were *Briscoe & Jones* on the brief, for the appellees.

SHEHAN, J., delivered the opinion of the Court.

The M. J. Grove Lime Company of Frederick County, a body corporate, appellant, was sued in the Superior Court of Baltimore City in two cases by Dora Wolfenden and James Wolfenden, respectively. These two appeals are contained in one record and are from judgments entered in that court. The suits were for personal injuries caused by a collision of an automobile in which appellees were riding and a truck belonging to the appellant and operated by its servant. The accident occurred in Frederick County, at the intersection of the Liberty Road and the Gettysburg Highway. The plaintiffs were riding as passengers in the automobile operated by a Miss Schneider.

Three points were urged by the appellant in the brief and in the argument as grounds for reversal. The first was lack of jurisdiction in the Superior Court of Baltimore City to try this case, on the grounds that the defendant was a resident of Frederick County and did not carry on any regular business in Baltimore City. Second, there is no evidence in the case legally sufficient to entitle the plaintiff to recover, and prayers directing verdicts for the defendant in each case should have been granted. The third, improper action of the *nisi prius* court during the trial of the case.

These two cases were tried together. The facts presented in each case were the same, and the procedure was identical. This opinion relates to both of the cases in like measure and effect. When these suits were brought, the defendant, appellant, promptly filed a motion in each case to quash the writs of summons and to set aside the returns of the sheriff thereon, and to enter judgments of *non pros.* These motions were overruled, and the cases were then tried on their merits under general issue pleas, and from judgments in favor of the plaintiffs these appeals were taken.

We will first consider the ruling of the court in regard to these motions, testing the right of the appellees to sue in Baltimore City for injuries caused by an automobile collision occurring in Frederick County. The facts in this connection are not in controversy, and we have presented only a construction of the statute as it relates to the undisputed facts presented in the trial of the cases. The Act of Assembly, (Code, art. 75, sec. 157) provides that: "No person shall be sued out of the county in which he resides until the sheriff or coroner of the county in which he resides shall have returned a *non est* on a summons issued in such county; provided, * * * that any person who resides in one county but carries on any regular business, or habitually engages in any avocation or employment in another county, may be sued in either county."

The M. J. Grove Lime Company of Frederick County, a Maryland corporation, is engaged in the sale of lime and stone throughout the State of Maryland, and has its offices at Lime Kiln in Frederick County and owns two plants in that county for the manufacture or preparation of its product. A considerable part of its business seems to have been in Baltimore City, where it sells large quantities of lime and stone for municipal uses, and also deals largely with the State Roads Commission. The transactions with the State Roads Commission consist, not only of selling its products to it, which are distributed throughout the State of Maryland, but also in the construction of state roads in some counties of the State.

According to the evidence, all of this work and sales were directed, operated, or undertaken through its offices at Lime Kiln.

E. R. Willoughby sold large quantities of lime and stone on a commission basis, and these operations covered some counties on the Western Shore, and the Eastern Shore of Maryland, Delaware, and parts of New Jersey. He solicited wholesalers in Baltimore City. His authority was limited to soliciting business at certain prices fixed by the appellant. Sales were not consummated by him.

Orders obtained were submitted to the office at Lime Kiln and there accepted or rejected. The stone and lime were delivered usually by rail, but occasionally by trucks. Deliveries in Baltimore were seldom made by truck. The billing of this merchandise was conducted at Lime Kiln, and payments were made through that office, although Willoughby occasionally received payments. This only seems to have been casual, and only a few of such incidents occurred each year, and then largely for the convenience and at the request of purchasers. When these payments were received, if in cash, he sent his own check for the amount. If by check, it was forwarded to Lime Kiln. The defendant is not listed in the telephone directory of Baltimore City, but Willoughby's name, in promotion of his own business as a solicitor for the defendant, was listed in the city directory from the year 1928 to 1930, but this seems to have been done without the direction or knowledge of his principal, and Willoughby himself had nothing to do with the insertion of his name in the Baltimore City Directory. None of Willoughby's expenses are paid, and no office is maintained for him. The only remuneration he receives from the company is his commission on sales. Willoughby is employed by the Acme Guano Company, for whom he works on a salary as a traveling salesman, and from the facts it appears that his work in selling stone and lime is rather a side line, augmenting his income by commissions. There are some other facts of like character, but of no probative force, in connection with Willoughby's operations, and some incidents that would naturally arise in the course of his business as salesman for the company, such as the single incident of the receipt of a registered letter by Helen Cummings for the company and the forwarding of it to Lime Kiln, the consultation of officers of the company with the State Roads Commission and the Water Department in relation to requests for bids mailed to Lime Kiln, and there considered and acted upon, have very little bearing and rendered little assistance in passing upon this question. They are only such incidents of trade as

wholesale houses operating in Baltimore City would experience through their salesmen in the counties and other parts of the State. The submission of bids to the State Roads Commission at Baltimore City, to the State purchasing agent, the central purchasing bureau of municipal government, and county agencies, and the awarding of contracts for such materials as their bids justified; and likewise the soliciting of orders by the salesman Willoughby throughout the state, cannot be held to constitute a regular business conducted in the several divisions of the state as contemplated by the statute, article 75, section 157. The regular business was operated at Lime Kiln in Frederick County, and the business generally covered the procuring and filling of orders from numerous counties on the Eastern and Western Shores, the State of Maryland generally, and the State of Delaware and parts of New Jersey, and no authority was given to go beyond the soliciting or such orders. It has been decided that "the mere soliciting and obtaining of orders within a state by the agent of a foreign corporation for goods to be shipped into the state to the purchaser does not amount to doing business within the state, such as to render the corporation amenable to service of process therein." 60 *A. L. R.* 1031; 101 *A. L. R.* 133.

The Supreme Court has said in *People's Tobacco Co. v. American Tobacco Co.*, 246 U. S. 79, 38 S. Ct. 233, 235, 62 L. Ed. 587: "As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that State, as above detailed, the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it." See, also, *Bruner v. Kansas Moline Plow Co.* (C. C. A.) 168 Fed. 218; *Id.*, 7 Ind. T. 506, 104 S. W. 816.

These and other cases in the federal courts are analogous to and aid in the construction of the statutes being considered. They deal with questions construing the mean-

ing of statutes wherein the transaction of business within the state are involved, and hold that the sale of goods by means of solicitors or agents in itself does not constitute or amount to doing business, such as would subject the corporation or seller to the local jurisdiction for the purpose of the service of processes upon it, nor will the sale and delivery by such solicitation and the collection of prices constitute carrying on a business within such state or territory, within the meaning of the statute prescribing the conditions under which foreign corporations may do business therein. In this case it is not necessary for us to go to the same extent that was done in *Bruner v. Kansas Moline Plow Co., supra,* and *People's Tobacco Co. v. American Tobacco Co., supra.* The case of *Stewart Fruit Co. v. Chicago, Milwaukee & St. Paul R. Co.,* 143 Md. 56, 121 A. 837, deals with this subject in a comprehensive manner, and this court held that, where an agent of the Baltimore & Ohio Railroad Company sold passenger tickets for transportation over the Chicago Railroad, and issued bills of lading for transportation of freight over its lines, and there was evidence that an agent of the Chicago Railroad Company had come into Maryland and solicited the shipment of freight over the Chicago lines, those acts did not constitute doing business in Maryland. The decisions generally hold that the solicitation of business does not constitute doing business or carrying on any regular business in any given territory. The latest Maryland case on this subject, wherein the above statute is construed, is that of *National Bank of Baltimore v. Steele,* 143 Md. 484, 122 A. 633, wherein it was held that a federal officer whose duties require his presence in Baltimore a part of each week and who resides in the county and there practices law does not carry on any avocation or employment within the meaning of this statute such as to permit suit against him in the City of Baltimore. In the instant case the activities of the appellant in Baltimore City cannot be held to be other than soliciting orders for the purchase of its product through an agent, paid by commissions upon the orders obtained by him and ap-

proved by the company at its office in Frederick County, and the bids submitted for supplying material to the various branches and agencies of Baltimore City, the counties, and the State, were sent by the company from the office at Lime Kiln and were either accepted or rejected by that agency of the government that had requested them or interested it in making such bids. These activities do not constitute the carrying on of any regular business or habitually engaging in any avocation or business within the meaning of the statute, and the trial court erred in refusing to grant the motions to quash the writs of summons, and to set aside the returns of the sheriff and to enter judgments of *non pros.* in the said cases respectively. In view of what we have said and of our conclusions that the Superior Court of Baltimore City had no jurisdiction over this defendant in these suits, the other questions presented in this appeal need not and should not be considered. The parties should be left to litigate their differences in the proper tribunal, which, so far as this record shows, is in Frederick County, Maryland.

*Judgment reversed in both cases; costs to be paid by the appellees respectively.*