**ERICKSSON v. CARTAN TRAVEL BUREAU, Inc.**

**SCHEUERMAN v. CARTAN TRAVEL BUREAU, Inc.**

Civ. Nos. 5918, 5919.

United States District Court
D. Maryland, Civil Division.

Jan. 9, 1953.

J. Cookman Boyd, Jr., Henry M. Decker, Jr., of Tydings, Sauerwein, Benson & Boyd, Baltimore, Md., for plaintiffs.

**316**

Jesse Slingluff, Jr., Frank T. Gray, of Piper & Marbury, Baltimore, Md., for defendant.

CHESNUT, District Judge.

The jurisdiction of the court in both cases is by removal from the Superior Court of Baltimore City, a Maryland State Court. In each case the plaintiff is a resident and citizen of Maryland and the defendant is an Illinois corporation. Substituted service of summons on the defendant was made under the procedure outlined in a Maryland statute upon the Secretary of State of Maryland. In each case the defendant has made a motion to quash the service on the ground that it is not subject to suit in this State. The question is the same in both cases and can conveniently be determined in one opinion.

The plaintiff's cause of action in both cases is based in some counts on a contract and in others on a tort. The plaintiffs procured through the Metropolitan Tourist Company in Baltimore reservations and a contract for an automobile tour of ten days in Mexico from and to Mexico City. Transportation to Mexico, independently of the defendant, was made by the Metropolitan Tourist Company with an airline to Mexico City. In their complaints the plaintiffs allege that they were seriously injured while on one of these tours from Mexico City in or near Acapulco by the alleged negligence and incapacity of the driver of the motor car in which they were traveling.

The applicable Maryland statute authorizes substituted service on the Secretary of State in suits against foreign corporations in certain cases. See Flack's Annotated Code of Maryland, Vol. I, Art. 23, § 88, and particularly subsections (a) and (d). As applied to these cases suit by substituted service is authorized only (1) if the foreign corporation is doing an intrastate or interstate business in Maryland (section a) or (2) if the cause of action arises out of a contract made within Maryland (section d). Counsel for the plaintiffs contends that the facts show the existence of both conditions. Counsel for the defendant contends to the contrary.

The relevant facts are to be found in opposing affidavits supplemented in some part by oral stipulation of counsel at the hearing and some letters then produced and filed by consent as additions to the affidavits. The principal facts as I find them can be briefly stated.

The plaintiffs wished to make a travel tour from Baltimore to Mexico City by air, and to spend ten days in Mexico taking motor trips from Mexico City to points of interest in Mexico. In May of 1951 they conferred with the Metropolitan Tourist Company of Baltimore with regard to travel accommodations. The latter furnished them with printed circular advertisements of various Mexican tours including among others a circular issued by Cartan with regard to tours in Mexico. Cartan is a tourist agency with its principal place of business in Chicago, Illinois, engaged in arranging tours in many distant lands including Europe, Canada and Mexico, but particularly in Canada and Mexico; and also in the United States. It advertises such tourist travel to be arranged for by it by printed circulars distributed to various local tourist agencies, as in Baltimore with the Metropolitan Tourist Company and the American Express Company. Cartan has no officer or resident agent in Baltimore, has no office here and no telephone listing in Baltimore or elsewhere in Maryland. It has no general agency or contract of any kind with the Metropolitan Tourist Company or any other Maryland person, association or company, with the sole exception that the local tourist agency is paid a commission of 10% on the gross amount paid by tourists who obtain reservations for foreign tours through the local tourist company.

In the instant case the Metropolitan recommended as more suitable for the plaintiffs a Mexican tour advertised by a travel agency other than Cartan, but the plaintiffs decided to select the Cartan ten day Mexican tour, and in consequence on May 21, 1951 the Metropolitan by mail requested Cartan to make the appropriate reservations for the plaintiffs for the Mexican accommodations departing November 10, 1951 from Mexico City. Metropolitan

asked for confirmation of such reservations and on May 31, 1951 the confirmation was made by Cartan, a deposit of $25 being required on account of each tourist. This was promptly paid. On June 27, 1951 Cartan forwarded to Metropolitan a statement of the total tour cost including federal tax in the amount of $482.72, less the deposit of $50 and a commission of $46.58, with a statement that the net balance of $386.14 would be due and payable October 27, 1951. The notice included in typewriting "We understand you furnish air transportation. Please advise flight number. Please advise passenger re vaccination and return forms with voters cards or birth certificates". It was clearly stated in the correspondence that what Cartan had arranged for was only hotel accommodations in Mexico City and the motor tours from and to Mexico City in Mexico. On October 8, 1951 the Metropolitan paid the net balance due by check to Cartan and on October 10, 1951 Cartan sent to Metropolitan the coupon books entitling the holders to the tour reservations. On October 24, 1951 the Metropolitan sent to the plaintiffs a bill for the balance due from them to it and on October 27, 1951 the plaintiffs paid the Metropolitan therefor. The relations of Metropolitan and Cartan were wholly by mail from Baltimore and Chicago. The plaintiffs independently and separately arranged with Metropolitan for air transportation to and from Mexico and they arrived in Mexico City on November 10, 1951. They allege that they were negligently injured in or near Acapulco about ten days later while on the tour arranged by Cartan.

■ On these facts I conclude that the contract as to Cartan was made in Illinois and not in Maryland. Counsel for the plaintiffs contends that Metropolitan was acting as the agent for Cartan; but in my opinion they were acting as an agent or broker for the plaintiffs and not as an agent for Cartan. Metropolitan clearly had no authority to make any reservations which could be made only by confirmation by Cartan from Chicago. It is also apparent that Cartan billed the Metropolitan Tourist Company and not the plaintiffs and did not forward from Chicago the tourist coupon reservations until the Metropolitan had paid Cartan and in turn Metropolitan held the coupon reservations until they were paid therefor by the plaintiffs. The only fact bearing on Metropolitan as an alleged agent of Cartan was the payment by Cartan of a customary commission of 10% to Metropolitan as the tourist travel broker in the transaction. Such a 10% payment is customary in that type of travel agency business. The payment of such a customary commission to a broker does not make him an agent of the party making the payment. Common instances are the payment of commissions by a vendor to a real estate broker acting for the vendee and to an insurance broker acting for the insured by the insurer.

■ Counsel for the plaintiffs contends that on the facts the contract should have been held to have been made in Maryland; but as already indicated, I cannot agree to this view. In Maryland at least the locus contractus is the place where the last act which makes the agreement a binding contract is performed, and this, of course, depends upon the facts of the particular case. In general where an offer is made by mail with the implied invitation to accept by mail the contract is complete when the acceptor mails his acceptance of the offer. A.L.I. Restatement of Contracts, §§ 64 and 66. But where the acceptor sends the acceptance by mail to a local agent for delivery the contract is regarded as consummated at the place where delivery is made. And this rule has been applied in Maryland with regard to insurance policies obtained in Maryland by an insured through a foreign insurance company by a local insurance broker. Stevens v. Rasin Fertilizer Co., 87 Md. 679, 41 A. 116; Sun Insurance Office, Ltd. v. Mallick, 160 Md. 71, 81, 153 A. 35. And see A.L.I. Restatement Conflict of Laws, §§ 317–319. In the instant case the contract was consummated when Cartan, after confirming the reservations, sent the coupon books therefor to Metropolitan, after receiving in Chicago the latter's check for the net amount of the bill. The forwarding of the coupon books from Chicago was the final step in completing the contract.

The other ground on which counsel for the plaintiffs contends that the substituted service was valid is that on the facts appearing in the affidavits Cartan was doing business in Maryland. But I cannot agree in this contention. It is sought to be supported, in addition to the contention that the Metropolitan was acting as agent for Cartan, by reference to some of the advertising circulars furnished by Cartan to local tourist bureaus, some of which have been filed as exhibits with the affidavits for the plaintiffs. Particular attention is called to a circular issued by Cartan in 1952 entitled "Cartan's Eastern Wonderland Tours". This tour originates in Chicago, by rail to New York City, then by rail from New York to Philadelphia, Pennsylvania, with a side trip to Atlantic City, N. J., thence from Philadelphia to Washington, D. C., by B. and O. Railroad, with stops in New York, Atlantic City and Washington, and side trips from those three Cities with hotel reservations, and return to Chicago by rail. A representative of Cartan accompanies a party of a considerable number of tourists, say about sixty, on such an eight-day tour. The principal function of the travel representative is to arrange for transportation of baggage and for motor trips in New York and Washington. There is no stop in Maryland. But the circular calls attention to the beautiful scenery along the rail route including particularly various scenic delights in Maryland on the rail route of the B. & O. along the Potomac River.

Attention is also called to the printing on the outside cover of the coupon books for reservations in Mexico City and the motor tours therefrom. The printing reads: "Cartan's Air Tour to Mexico". It also appears that in some cases Cartan will provide air transportation to Mexico if desired by the tourist. The circulars filed in evidence do not indicate any air flight originating in Maryland. In the instant case air transportation to and from Mexico City was independently arranged by Metropolitan Tourist Company without any participation of any kind by Cartan therein. On these facts I conclude that Cartan was not doing either intrastate or interstate business in Maryland. I do not think that the mere presence of the travel representative of Cartan on the so-called Eastern Tour from Chicago to Washington to Chicago, passing through Maryland on the B. and O. Railroad without a stop in Maryland, should be considered the doing of business in Maryland by Cartan within the meaning of the Maryland statute. Cartan's contacts with the State of Maryland seem to me to be entirely too slight to warrant the conclusion that it had subjected itself to process in Maryland by substituted service. See International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95. The facts of the present case, with particular reference to the relations between Cartan and Metropolitan, are fairly similar in principle to those in this Circuit in the case of Cannon v. Time, Inc., 4 Cir., 115 F.2d 423, arising under the Virginia law, where the service of summons was quashed; and to the same effect see Polizzi v. Cowles Magazine, Inc., 5 Cir., 197 F.2d 74.

What constitutes doing business in Maryland by a foreign corporation has been considered by the Court of Appeals of this State in a number of cases arising prior to the recently amended statute above mentioned. See, for instance, Stewart Fruit Co. of Baltimore City v. Chicago, M. & St. P. R. Co., 143 Md. 56, 121 A. 837, and Grove Lime Co. v. Wolfenden, 171 Md. 299, 188 A. 794. They furnish no support for the plaintiffs' contentions in this case. The only decision of the Maryland Court of Appeals under the amended statute which I have noticed is Park Beverage Co. v. Goebel Brewing Co., Md., 79 A.2d 157, where it was held that a foreign brewery corporation had not made a contract in Maryland under what is now section 88(d) by reason of two shipments of beer to a Maryland distributor originating on an order made in Maryland but not accepted until approved at Detroit, and payment made therefor by the local distributor in Detroit prior to the shipments, and the foreign corporation was not otherwise doing business in Maryland. The Maryland statute as it now appears was also extensively considered by this court in Johns v. Bay State Abra-

sive Products Co., 89 F.Supp. 654, where on the motion as then presented one of the defendants was held subject to substituted service on an alleged tort occurring in Maryland, while the other defendant was held not so subject because it was not doing business in the State; and the amended statute has recently been discussed in a carefully considered opinion by Judge Warnken in the Maryland State Court case of The Boston Metals Company v. Companis De Astral, S. A., Baltimore City Court, reported in the Baltimore Daily Record of December 3, 1952, in which it was determined on the facts that a Panamanian corporation was subject to suit here by a resident citizen because the contract for breach of which the suit was brought, had been made in Maryland. See, also Edgewater Realty Co. v. Tennessee Coal, Iron & R. Co., D.C.Md., Judge Coleman, 49 F. Supp. 807. It has very generally been held that the mere solicitation of business within the State does not constitute doing business therein; but that when other activities of a substantial nature are added thereto the result may be different depending upon the facts of the particular case. In line with the principle of the Maryland case of Stewart Fruit Co. v. Chicago, M. & St. P. R. R., supra, it has been held in a number of cases in the last few years in this court that the solicitation of business by several southern railroads without railroad trackage in this State, including even the maintenance of a local office for the solicitation of freight and passenger service, does not of itself constitute doing business in this State.

Counsel for the plaintiffs emphasizes the inconvenience to the resident plaintiffs of being obliged to sue the defendant in Illinois, and on the other hand counsel for the defendant urges that it would be oppressive to the defendant to be subject to suit here on the facts stated because in principle, by virtue of its similar activities in many other States, it would likewise be subject to suit in many of them under local statutes of a similar nature. While the relative convenience of the parties to a suit with respect to the particular forum is a factor which may be considered in close

cases, I am not disposed to think that there is any great preponderance of convenience here to one or the other of the parties with respect to the forum. The ultimate merits of the case would seem to depend necessarily upon what occurred in Mexico, very possibly to be covered by depositions in the case probably rather than the attendance of the witnesses themselves in court. But however that may be, the real question before the court is whether the facts bring the case within the operation of the particular Maryland statute. As I think they do not, my conclusion is that the motion to strike out the service of summons must be granted in both cases. Counsel may present the appropriate orders therefor in due course.