# THE CENTRAL OF GEORGIA RAILWAY COMPANY *vs.* MAURICE H. EICHBERG, ET AL.

*Foreign Corporation Held to Carry on Business in this State—Service of Process in Suit on Soliciting Agent of Foreign Corporation.*

A railroad company of the State of Georgia had a traffic arrangement with a steamship line of this State, running from Baltimore to Savannah, Georgia, by which through bills of lading and tickets were issued in this State by the steamship line for transportation of goods and passengers over the line of the railway company. An agent in this State was employed to solicit freight for the railroad company which freight was first received and transported by the steamship company and delivered to the railroad company in Georgia. This agent had no authority to make contracts or to sign bills of lading, all of which were made by the

steamship company, which was the acknowledged agent of the railroad company to receive goods and issue bills of lading and collect freights. The agent was appointed, and his salary and office expenses were paid jointly by the two companies. *Held*, that the railroad company transacted business in this State within the meaning of Code, Art. 23, sec. 409, which provides that any corporation not chartered by the law of this State, which shall transact business therein, shall be deemed to exercise franchises within the State, and shall be liable to suit, etc.

*Held*, further, that the railroad company is liable to suit in this State by process served on such agent, under Code, Art. 23, sec. 411, which directs that foreign corporations exercising franchises in this State shall be liable to a suit by a resident of this State, and that process may be served upon any agent of such corporation. It may fairly be presumed that it is the official duty of said agent to communicate the fact of service of process to his principal.

Since a statute of this State provides a method of service of process upon a foreign corporation doing business here, such corporation is presumed to assent to such method of service when it transacts business in this State.

*Decided February 5th, 1908.*

Appeal from the Superior Court of Baltimore City (SHARP, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*John J. Donaldson*, for the appellant.

*William S. Bryan, Jr.*, and *Benjamin Rosenhein*, for the appellees.

WORTHINGTON, J., delivered the opinion of the Court.

The action in this case was instituted in the Superior Court of Baltimore City by the appellees (plaintiffs below) against the appellant and the Merchants and Miners Transportation Company, as joint defendants, to recover damages alleged to have been sustained by the plaintiffs through the negligence of the defendants in transporting a large quantity of wrapping paper and paper bags from Atlanta, in the State of Georgia, to Baltimore, in the State of Maryland; the wrapping paper and paper bags having been as alleged injured in transit.

The *narr* avers that both the defendants are common carriers of goods; the Central of Georgia Railway Company operating a steam railroad from Atlanta, in the State of Georgia, to Savannah, in the State of Georgia; and the Merchants and Miners Transportation Company operating steamships from Savannah, in the State of Georgia, to Baltimore, in the State of Maryland.

Upon the filing of the *narr* a summons was issued out of said Court for the defendants, upon which the Sheriff made the following return: "Summoned the Merchants and Miners Transportation Company, a body corporate, by service on John H. Robinette, treasurer, and the Central of Georgia Railway Company by service on Frank L. Mortimer, its commercial agent, and a copy of *narr* and notice to plead left with each defendant, also notice of said summons left at the principal offices of the said corporations, also copies of the writ of summons, the process in the within case under cover with postage stamp annexed to each envelope placed in the postoffice of Baltimore City on the 21st day of March, 1907, and directed to John H. Robinette and Frank L. Mortimer respectively, at the principal offices of said companies at the southeast corner of Light and German streets in the city of Baltimore, they being the officers in charge thereof."

Subsequently the Central of Georgia Railway Company appeared by counsel, specially and not generally, and moved the Court to quash the writ of summons issued against it and to set aside the alleged service of the same, for the reasons (1) that the said railway company was incorporated by the State of Georgia, where its lines were chiefly located, and that it did not transact business in the State of Maryland so as to be amenable to the jurisdiction of the Courts of this State; and (2) that service was not made on such an agent of said corporation as would legally bring the corporation into Court.

The Court below held the service sufficient and the railway company has brought this appeal.

It was agreed by counsel at the argument that no advantage should be taken of the fact that there has been no final dispo-

sition of the case by the Court below; the desire on both sides being to have the question of the sufficiency of the service determined by this Court on this appeal.

In regard to the service of summons on foreign corporations the statute law of this State provides as follows: (409) "Any corporation not chartered by the laws of this State which shall transact business therein shall be deemed to hold and exercise franchises within this State and shall be liable to suit in any of the Courts of this State on any dealings or transactions therein."

(411) "Suits may be brought in any Court of this State, * * * against any corporation not incorporated under its laws, but deemed to hold and exercise franchises herein, * * * by a resident of this State for any cause of action; and process in such suits may be served as provided in section 410, and also upon any agent of such corporation, * * * and in case of service of process on any agent notice of such process shall be left at the principal office of said corporation * * * if there be such office in this State."   Code 1904, Art. 23, secs. 409, 410 and 411.

The question is one for judicial determination upon the facts as they appear in the record. The question may be divided into two propositions, First: Was the appellant doing business in this State? Second: Was the service upon a proper agent of the appellant? The facts as they appear in the affidavits and testimony found in the record are as follows:

The appellant is a railroad corporation organized and existing under the laws of the State of Georgia, having its whole railroad and traffic in that State and in adjoining States, no portion of its line of railway extending into this State.

It does however have an agent in this State, a Mr. Mortimer, whose duty is to solicit in Baltimore and the surrounding territory, traffic for and over what is called the "Central Savannah Line." The Central Savannah Line having no distinct legal entity, but being merely a name to indicate the route made up of the Merchants and Miners Transportation

Company, the Central of Georgia Railway Company, and the connections of the said railway company.

Mr. Mortimer has an office in Baltimore, the expense of maintaining which is paid jointly by the companies above named. He has no authority as the employee of the Central of Georgia Railway Company to make contracts or agreements for the shipment of goods or passengers or to sign any bills of lading for freight.

All bills of lading for goods received by the Merchants and Miners Transportation Company for shipment to Savannah, Georgia, and from thence to points on the appellant's line are issued by the said Merchants and Miners Transportation Company.

All other bills of lading issued in Maryland entitling the holder thereof to the transportation of property over the appellant's line in Georgia, are issued by the initial carrier and not by the appellant.

Mr. Mortimer in the solicitation of business is under the direction of the Merchants and Miners Transportation Company. He has no discretion in the quoting of rates and no authority to make or agree to rates other than those printed in the tariff issued to the public for account of the appellant railway company by the Merchants and Miners Transportation Company. He has no authority to collect any moneys in payment of freight or to entertain or pay claims for loss or upon any other ground. Mr. Mortimer's salary is paid to him directly by the Merchants and Miners Transportation Company, who in turn collects from the appellant its proportionate part.

The appellant has no property in the State of Maryland except its interest in the furniture and fixtures used by Mr. Mortimer in his office. Mr. Mortimer's whole duty is to solicit freight, to seek to get it against the appellant's competitors, and to persuade the shippers to select the route which includes the Central of Georgia.

In case of goods going south over the Central Savannah Line, via. the Merchants and Miners Transportation Com-

368    CENTRAL OF GA. R. CO. vs. EICHBERG.

Opinion of the Court.                                    [107

pany, the latter would issue the bill of lading. The bill of lading in the record reads in part as follows: "This bill of lading is signed for the different carriers who may engage in the transportation, severally not jointly, each of which is to be bound by and have the benefit of the provisions thereof, and in accepting this bill of lading the shipper, owner and con-. signee of the goods and the holder of the bill of lading agree to be bound by all its stipulations whether printed or written."

A ticket sold by the Merchants and Miners Transportation Company over its line to Savannah and thence by the appellant's road to Macon, Georgia, reads in part as follows: "In selling this ticket for passage over other lines and checking baggage on it the Merchants and Miners Transportation Company acts only as agent and is not responsible beyond its own line." One of the coupons on the ticket reads as follows: "Transfer—Transfer of one passenger and ordinary baggage from the Merchants and Miners Transportation Company's wharf to Central of Georgia Railway depot." Then follow the names of several cities and towns in Georgia and Alabama presumably stations on the line of appellant's railroad in those States, and then appear the words "Issued by Merchants and Miners Transportation Company."

On cross-examination Mortimer stated "that his office is in the Merchants and Miners' office building at the corner of Light and German streets, and that on the window of his office are the words "Central of Georgia Railway, Commercial Agent," that he received his pay from the Merchants and Miners Transportation Company, but presumed it is contributed to by the Atlantic Coast Line, and the Central of Georgia Railway Company; if one wanted to send freight from here (Baltimore) to some point on the Central of Georgia Railway, witness would quote him a rate; witness would not take the money and issue a bill of lading. This would be done by the agent of the Merchants and Miners Company at Long Dock."

It was admitted for the purposes of the motion that the plaintiffs are both residents of the State of Maryland. It was

also admitted that through shipments are made from Baltimore by way of the Merchants and Miners Transportation line and the Central of Georgia Railway to points on the line of the latter road, and a through bill of lading is issued for the same and a single sum paid for the carriage; also that there is a sign on the door of the office where a ticket like the one aforementioned was sold, which reads: "Merchants and Miners Transportation Company's Ticket Office." On one of the windows in the building is the following sign: "Central Savannah Line, via. the Central of Georgia Railway and the Merchants and Miners Transportation Company. The regular advertising folders have inside of them the statement that the Central of Georgia sells tickets over the Merchants and Miners Transportation Company for the Jamestown Exposition and the tickets over the Central of Georgia can be purchased at any of the Merchants and Miners ticket offices."

Plaintiffs proved by the deputy sheriff who served the writ of summons in this case that before serving the writ, he first asked Mr. Mortimer if he was the commercial agent of the Central of Georgia Railway Company and having been answered in the affirmative he served the writ upon him.

It also appears that there is another soliciting agent of the appellant in the office of Mr. Mortimer who is under the control of Mr. Mortimer and who is called the commercial agent of the Central Savannah Line.

Upon these facts depends the answer to the question whether the service of summons on Mortimer was legally sufficient to bring the appellant within the jurisdiction of the Superior Court where this suit was instituted.

One element of this sufficiency, as heretofore suggested, is whether at the time of the service of the summons on Mortimer, the appellant was doing or transacting business in this State, and another is whether Mortimer was at the time of such service, such an agent of the appellant corporation as is contemplated by our statute regulating service of process upon foreign corporations doing business here.

There is no case in our own reports directly decisive of the

question, and an examination of the reported cases of the
other States and of the Federal Courts, on the subject, dis-
closes some diversity of opinion in regard to it.

It was formerly held that a corporation could not be sued
*in personam* outside the boundaries of the State under whose
laws it was created and wherein it resided; 19 *Cyc.*, 1323,
23 L. R. A. 490, but to meet and obviate the inconvenience
and injustice of such a doctrine, the Legislatures of the several
States interposed and provided for the service of process on
officers and agents of foreign corporations doing business
therein. *St. Clair* v. *Cox*, 106 U. S. 350 (1882), 27 L. ed. 222.

In 19 *Cyc.*, 1326, where this subject is considered, the
governing principle in such cases is declared to be set forth
in the clearest light by Mr. Justice Field in *St. Clair* v. *Cox*,
*supra*, as follows: "The foreign corporation must have entered
the domestic State for the purpose of carrying on its business
there; and the process must be served upon an agent sustain-
ing such relation to it that notice to the agent might well be
deemed notice to the principal without any violation of the
principles of natural justice."

In solving the question presented by the record in this
case, the first inquiry is whether the appellant was at the time
of the service of the summons on Mortimer, transacting busi-
ness in this State within the meaning of our statute.

The facts show that while Mortimer, the agent upon whom
the summons was served, had no power to make contracts for
the appellant, yet that by and through the agency of the Mer-
chants and Miners Transportation Company, a domestic cor-
poration, contracts were made in this State for and in the
name of the appellant which contracts the appellant recog-
nized and accepted as valid and binding upon it.   The do-
mestic corporation sold tickets and issued bills of lading good
over its own line and also over the lines of the appellant.   In the
case of a passenger the whole fare would be paid to the do-
mestic corporation, and in the case of freight, a through bill of
lading would be issued and a single sum paid for the carriage.

Mr. Mortimer was appointed jointly by the Merchants and

Miners Transportation Company and its connecting carrier, the Central of Georgia Railway Company, to solicit traffc for what was known as the "Central Savannah Line," which was the appellation for advertising purposes of the whole route made up principally of the two connecting carriers above mentioned. Thus, on one of the windows in the building occupied by the Merchants and Miners Transportation Company at the southeast corner of Light and German streets in the city of Baltimore, appears the sign: "Central Savannah Line, via Central of Georgia Railway and the Merchants and Miners Transportation Company." In this same building Mortimer has his office and as the representative of both these connecting carriers is regularly engaged in the procurement of freight for transportation over some part of the entire line. The regular advertising folders of the appellant have inside of them the statement that tickets over the Central of Georgia can be purchased at any of the Merchants and Miners ticket offices.

All these facts and circumstances taken together show that the sale of tickets and the issuance of through bills of lading by the domestic corporation over its own line and over the lines of the appellant, were not occasional or accidental, merely, but a part of its regular, usual and ordinary business; and that the domestic corporation was the recognized agent of the appellant, and as such, authorized to make contracts in this State, for the transportation of passengers and freight over appellant's lines in the State of Georgia.

We must therefore hold that the appellant was transacting business in this State within the meaning of our statute provisions on the subject. For cases more or less analogous we cite: *Denver and Rio Grande R. R.* v. *Roller*, 100 Fed. Rep. 738; *Van Dresser* v. *Oregon Ry. Co.*, 48 Fed. Rep. 202; *Merchants Mfg. Co.* v. *Grand Trunk Ry. Co.*, 13 Fed. Rep. 358.

The remaining inquiry is whether Mortimer upon whom the summons in this case was served, was, at the time of such service, such an agent of the appellant as is contemplated by our statute.

While it is true that when process is served on an agent o

a foreign corporation, the service must be upon such an agent as represents the corporation with respect to business which it does within the State; *Crook* v. *Girard Iron Co.*, 87 Md. 138; *North. Cent. Ry. Co.* v. *Rider*, 45 Md. 24, yet the general principle apart from statutory provision in regard to all corporations, is that process is sufficient if served upon some person upon whom it may fairly be presumed the duty devolves by virtue of his official position, or of his employment, to communicate the fact of service to the governing power of the corporation.    Service on such a person is service on the corporation.    *Dock* v. *Elizabeth Steam Mnfg. Co.*, 34 N. J. L. 312.

When a statute of the *forum* State provides a method of service upon foreign corporations, doing business there, the foreign corporation which comes there and transacts business, is presumed to assent to such method of service as fully as though it had specially authorized its agents to receive service of process in such method.    *Boggs* v. *Inter-American, &c., Co.*, 105 Md. 371; 13 *A. & E. Ency. Law*, 895; *Reeves* v. *Southern Ry. Co.*, 70 L. R. A. 523.

In the case at bar, Mortimer, upon whom the summons was served, was at the time of such service the acknowledged agent of the appellant in this State for the purpose of solicitation.. · He was also the agent of the Merchants and Miners Transportation Company for the same purpose.    In addition to this his office in Baltimore was maintained jointly by the two connecting carriers in the same building where were located the offices of the domestic corporation, which, as we have seen, was, for transportation purposes, the agent of the appellant in this State.    He was under the immediate direction of the domestic corporation by whom his salary was, in the first instance, paid, though a proper proportion of such salary was afterwards collected of the appellant.    While Mortimer did not himself issue bills of lading he did quote rates and direct shippers to the offices of the domestic corporation where through bills of lading were issued and the whole charge for transportation collected. · Was he not therefore representing

the appellant here with respect to the business which it was doing in this State? and may it not fairly be presumed from the character of his employment, without any violation of the principles of natural justice, that he would communicate the fact of the service of summons upon him to the governing power of the foreign corporation which he represented here? If so, we think Mortimer was such an agent of the appellant as is contemplated by our statute.

When a corporation avails itself of the privileges of doing business in a State whose laws authorize it to be sued there by service of process upon an agent, its assent to that mode of service is implied. Accordingly it has been repeatedly held that a foreign corporation consents to be amenable to suit by such mode of service as the laws of the State provide, when it invokes the comity of the State for the transaction of its affairs. *Denver, &c., R. Co.* v. *Roller*, 100 Fed. Rep. 741; *Ins. Co.* v. *French*, 18 How. 404.

We have examined and carefully considered the cases referred to by the learned counsel for the appellant and consider that wherein they are not distinguishable from the case at bar we cannot give them our sanction as applicable to the interpretation of the statute law of this State, regulating service of process in a transitory action like this.

We hold therefore that the appellant was doing business within this State and that the service of process upon Mortimer, was upon an agent bearing such relation to the business the appellant transacted in this State, as to render appellant amenable to an action *in personam* in the Court wherein this suit was instituted. The judgment will therefore be affirmed with costs.

*Judgment affirmed with costs.*