STATE OF MARYLAND, Use of Francis L. Bickel,
AND Margaret Bickel,

*vs.*

THE PENNSYLVANIA STEEL COMPANY OF PHIL-
ADELPHIA, PENNSYLVANIA.

*Foreign corporations: doing business within the State; service
of process; agents; motion to quash; appeals.*

A foreign corporation, that had not qualified under section
93 of Article 23 of the Code, by filing with the Secretary of
State a certificate giving the name of an agent authorized to
admit service, etc., was sued for damages; the summons was
returned by service on a party alleged to be its general agent;
a motion to quash was filed on the ground that the corporation
was not doing business within the State, and that the party,
on whom the notice was served, was not its agent for such a
purpose; the motion was sustained, and on appeal it was: *Held,*
that the ruling was not interlocutory, but was final in its nature
as to prevent the further prosecution of the suit, and one from
which an appeal would lie.                          p. 216

Where a state permits foreign corporations to do business
within its limits, and provides that in a suit against such a
corporation, growing out of business there done, the process may
be served upon its agents, the provision is to be deemed a condi-
tion of the permission; and corporations that subsequently do
business in the State are deemed to assent to such conditions as
fully as though they had specially authorized their agents to
receive service of the process.          :.          p. 218

Whether such a corporation is "doing business" within the State, in that sense, depends upon the facts in the particular case. p. 218

The Pennsylvania Steel Company, a foreign corporation, engaged in the manufacture of steel rails and other steel products, had failed to designate an agent upon whom process could be served, according to the provisions of section 93 of Article 23 of the Code; it had contracted for the erection of the steel superstructure of a bridge in Maryland, in the prosecution of which work one of the workmen was killed. R. C. Hoffman & Co., Inc., was a Maryland Corporation; it had never by any written instrument been appointed the agent of the Pennsylvania Steel Company, but for a great many years had acted as such in obtaining business for the Pennsylvania Steel Company for the sale of its products, and, as in this particular instance, had acted as its agent in procuring contracts for the erection of such steel structures; the Hoffman Company was paid by a commission, as general agent, upon all the sales and business made and obtained in the South, whether the sales and business were made by the Hoffman Company or not; the Hoffman Company for a long time occupied offices with the name, "The Baltimore Office, Pennsylvania Steel Company, R. C. Hoffman Co., Inc., Southern Sales Agents;" the Hoffman Company used stationery which had the same caption, and the officials of the Pennsylvania Steel Company, including its president and vice-president and its general manager, frequently visited the offices of the Hoffman Company and were fully aware of such notice and captions: *Held,* that under the facts of the case the Pennsylvania Steel Company was doing business in Maryland, and that the Hoffman Company was its agent of a character that implied authority to receive service of process. pp. 220-223

*Decided April 8th, 1914.*

Appeal from the Circuit Court for Washington County. (KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Frank G. Wagaman* (with *Palmer Tennant* and *Wagaman & Wagaman* on the brief), for the appellant.

*Henry H. Keedy, Jr.,* (with whom was *J. Clarence Lane* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

This suit was brought by the appellants, Frances L. Bickel and Margaret Bickel, as equitable plaintiffs, against the Pennsylvania Steel Company, a corporation incorporated under the laws of the State of Pennsylvania, to recover damages for the death of Ross L. Bickel, husband and father of the equitable plaintiffs, caused, as it is alleged, by the negligence of the defendant while he was engaged as its employee in the erection of the steel superstructure of a bridge across the Potomac River at Williamsport, Washington County, Maryland.

The accident resulting in the death of Bickel occurred on the 16th day of December, 1908, and this suit was instituted on December 11th, 1909, and after many renewals, the summons issued to the April Term, 1913, was returned "Summoned, the Pennsylvania Steel Company of Philadelphia, a corporation, by service on R. C. Hoffman & Company, incorporated, its agent, by service on Howard E. Kernan, Treasurer, and a copy of the process left with R. C. Hoffman & Company, incorporated, by leaving the same with Howard E. Kernan, Treasurer of the R. C. Hoffman & Company, incorporated, also notice of said summons left at the principal office of said corporation."

A motion filed to quash the return to the summons was granted and the return to the summons quashed. Among the

grounds assigned in the motion, and those upon which the defendant relies and upon which the Court below sustained the motion, are: 1st. That the "defendant is not now doing business in the State of Maryland, nor has it been doing any business therein, nor been engaged in doing any business in the State of Maryland since the 17th day of January, 1910." 2nd. That R. C. Hoffman & Company, incorporated, upon which the summons was served, was not at the time of the institution of the suit, or had it ever been, an agent of the defendant company upon which process could have been served for and on behalf of defendant company.

A motion to dismiss the appeal having been filed in this Court, it will first be considered.

It is contended by the appellee that the order sustaining the motion and quashing the return is not a final, but an interlocutory, order, from which an appeal to this Court will not lie, and to sustain its contention cites us to the cases of *Oland* v. *Agricultural Insurance Co.,* 69 Md. 248; *Bolgiano* v. *Gilbert Lock Co.,* 73 Md. 132; *Mullen* v. *Sanborn,* 79 Md. 364; *Central of Georgia Ry. Co.* v. *Eichberg,* 107 Md. 363; *Long* v. *Hawken,* 114 Md. 234. In the first of these cases, the one upon which the appellee mainly relies, the plaintiff instituted suit in the Circuit Court for Frederick County against an insurance company incorporated under the laws of the State of New York, and the summons issued against the defendant was returned served on the local agent of the defendant insurance company and a summons directed and sent by mail to the general agent or attorney of the company residing in the City of Baltimore especially appointed to receive process against the company, but whether such summons was ever received by the attorney or agent of the company was a controverted fact in the case. The Court there held that as the statute applicable to foreign insurance companies require them, before doing business in this State, to file with the Insurance Commission "a power of attorney appointing a citizen of this State, resident within this State,

the agent or attorney for the company upon whom process of law can be served," and as the defendant company in that case had met such requirement, good faith required that the process should have been served upon the attorney so selected and appointed and not upon the local agent.

The Court in that case dismissed the appeal, but in doing so said: "The case against the appellee is still pending in the Court below and process may be renewed and properly served in accordance with the provisions of the statute to which we have referred." In this case, however, the defendant company contends that it is not doing business in the State, and, further, that the party upon whom the process was served was not at such time its agent within the meaning of the statute.

In that case the Court held that the defendant corporation was doing business in the State of Maryland and that it could be properly sued in this State, and, further, that there was a party upon whom process could be served, binding upon the defendant corporation. But if it be held under the motion in this case that the defendant company is not doing business in this State and that R. C. Hoffman & Company is not the agent of the defendant company as aforesaid, then not only will no action lie against the defendant in this State, but there is no one, as disclosed by the record, upon whom process may be served, binding upon the defendant corporation, in the jurisdiction in which this suit is instituted, and, therefore, the order sustaining the motion to quash the return is so far final as to prevent the further prosecution of the suit, and thus an appeal will lie from said order to this Court.

In the case of *Central of Georgia Ry. Co.* v. *Eichberg, supra,* the question here raised was not presented to, nor decided by, this Court. That case, however, differs from the case before us in that the motion in that case was overruled, and there was nothing, by reason of such ruling, to prevent the further prosecution of the suit. In this case the motion was sustained and the return quashed. The other

cases cited contain nothing inconsistent with the conclusion that we have reached.

Section 92 of Article 23 of the Code of 1912 provides that "Any person or corporation, whether resident or non-resident of this State, may sue any foreign corporation regularly doing business or regularly exercising any of its franchises herein for any cause of action. * * * If such corporation has a resident agent authorized and prepared to accept service as provided by section 93 of this article, such process shall be served upon him. If the corporation has no resident agent so authorized and prepared, process may be served upon any president, manager, director, ticket agent or officer of the corporation, or upon *any agent or other person in its service.*"

The defendant company in this case, although coming within the provisions of section 93 of Article 23, failed to file with the Secretary of State a certificate giving "the name and address of its agent, resident in this State, authorized to accept service of process upon it," as required by said section.

. The validity of statutes of the character of the one above quoted is generally recognized.

"When a corporation has so far identified itself with a locality beyond the State of its creation and domicile as to be found there for practical business purposes, it is reasonable to treat it as there also to respond to its obligations when called upon to do so in the courts of that locality. The inconvenience and practical injustice of permitting corporations to invoke the comity of a foreign state, for the exercise of their franchises and the transaction of their business, and at the same time to obtain exemption from suit, have been met by legislative enactments in many States authorizing the service of process, in such cases, upon the agents of the corporations. The judgments obtained in suits thus commenced by service upon such agents, pursuant to the laws of the State, are valid everywhere, provided the corporation

was engaged in business in the State, and service was made upon an agent there, actually representing the corporation at the time." *Good Hope Co.* v. *Railway Barb Fencing Co.,* 22 Fed. 635; *Lafayette Ins. Co.* v. *French,* 18 How. 404; *Conn. Mutual Life Ins. Co.* v. *Spratley,* 172 U. S. 602; *St. Clair* v. *Cox,* 106 U. S. 350.

If the State permits a foreign corporation to do business within her limits and at the same time provides that in suits against it for business done there, process shall be served upon its agents the provision is to be deemed a condition of the permission; and corporations that subsequently do business in the State are to be deemed to assent to such condition as fully as though they had specially authorized their agents to receive service of the process. There is no authority, however, for the service of a summons upon such agent of a foreign corporation, unless the corporation be engaged in business in the State and the agent be appointed to act there. *St. Clair* v. *Cox, supra.*

The difficulty in these cases is in determining what acts of the foreign corporation constitute "doing business" in the State, so as to render it liable to be sued in such State. So far as we have been able to find, there has been no general definition of the term "doing business" in the sense that we are now dealing with that term. This question, it seems, must be largely determined upon the facts of each individual case, and so it must be determined in this case.

"In the State where a corporation is formed, it is not difficult to ascertain who are authorized to represent and act for it. Its charter or the statutes of the State would indicate in whose hands the control and management of its affairs are placed. Directors are readily found, as also the officers appointed by them to manage its business. But the moment the boundary of the State is passed, difficulties arise; it is not so easy to determine who represents the corporation there, and under what circumstances service on them will bind it." *St. Clair* v. *Cox.*

"In the absence of any express authority, the question depends upon the view of the surrounding facts and upon the inferences which the Court might properly draw from them. If it appear that there is a law of the State in respect to the service of process on foreign corporations, and that the character of the agency is such as to render it fair, reasonable and just to imply authority on the part of the agent to receive service, the law will and ought to draw such an inference and to imply such authority, and service under such circumstances and upon an agent of that character would be sufficient."

"The question turns upon the character of the agent, whether he is such that the law would imply the power and impute the authority to him, and if he be that kind of an agent, the implication will be made notwithstanding a denial of authority on the part of the officers of the corporation." *Conn. Mutual Life Ins. Co.* v. *Spratley, supra.*

The defendant corporation was in the year 1908, and is now, engaged in the manufacture of steel products of various kinds in the State of Pennsylvania. In August, 1908, it entered into a contract with the Washington and Berkeley Bridge Co., a West Virginia corporation, to furnish the material and erect for it a steel superstructure of a bridge spanning the Potomac River at the town of Williamsport, Washington County, Maryland. It was while the said Ross Bickel, a non-resident of Maryland, was employed by the defendant company in the work of erecting the said superstructure that he, on the 16th day of December, 1908, by reason of defendant's alleged negligence, was hurled and thrown from said bridge into the river below, sustaining injuries from which he died.

The record discloses that there has never been any written contract of agency between R. C. Hoffman & Co. and the defendant corporation, but as expressed by John C. Jay, "General Manager of Sales" for the defendant company, the existing agrement between R. C. Hoffman & Co. and the

defendant is the result of a "gradual growth of mutual con-
fidence." By the terms of which R. C. Hoffman & Co., as
the exclusive agent of the defendant company in Maryland,
solicited contracts therein, not only for the sale of defend-
ant's manufactured products, but in some instances, as in
the case before us, for the construction of steel bridges, and
were compensated therefor by commissions upon all the "busi-
ness" done by the defendant company within this State,
whether such business was procured through their solicita-
tion or not.

The office occupied by R. C. Hoffman & Co. as such
agents is in the Continental Trust Building, Baltimore, Md.,
the rent for which is paid by the said R. C. Hoffman & Co.,
but upon its doors appears in large letters the following:

"Baltimore Office, Pennsylvania Steel Company, R. C.
Hoffman & Co., Inc., Southern Sales Agents."

The officials of the defendant company, including its Pres-
ident and Vice-President, at times visited the said office
occupied by R. C. Hoffman & Co., and John C. Jay, its Gen-
eral Manager of Sales, is frequently there; all of these offi-
cials were fully aware of the above notice appearing upon
the door of the office.

It is shown by the testimony that all contracts were exe-
cuted by the defendant company, but it is not shown whether
such contracts were issued within or without the State.
Upon the letterheads used by R. C. Hoffman & Co. in corre-
sponding with the defendant company and others, appears
the following: "Baltimore Office, Pennsylvania Steel Co.,
R. C. Hoffman & Co., Inc., Southern Sales Agent."

The R. C. Hoffman & Co. is now, and has been since its
incorporation in 1905, the exclusive agent of the Pennsyl-
vania Steel Co. in the State of Maryland, and it is shown by
the record that the business done in this State by the last
named company amounts to at least one million dollars annu-
ally.

The witness Jay when asked "Confine yourself at the time since you have been General Manager of Sales, and state whether or not the Pennsylvania Steel Co., of Philadelphia, has been engaged in any business within the State of Maryland other than the sale of its products?" answered, "It has not." This witness has for many years been in the employment of the defendant corporation and his evidence discloses that he was familiar with the affairs of the company. Therefore, in saying that the company had not been engaged in any business in this State other than the sale of its products since his appointment to his present position in 1912, he practically admitted that prior to that time it had been engaged in other business in the State of Maryland, which was undoubtedly true, as shown by the facts of this case. No other witness was placed upon the stand by the defendant and no other testimony was given that in any way reflects upon the time when the defendant company ceased, if it has ceased, to exercise its franchises in this State in the construction of bridges, or in the performance of any similar work. It may have been that the company within the period mentioned, between March, 1912, and April, 1913, when the witness was upon the stand, had not done any construction work in the State, yet it does not follow from that fact that the company had abandoned this State in respect to this branch of its business. It may not have been able within such period to secure work upon terms satisfactory to it, and for that reason had not during said period been engaged in such work. This, the only evidence offered in support of the motion, is by no means conclusive of the fact therein alleged, that the defendant company was not doing business in the State at the time of the service of the process upon K. C. Hoffman & Co., its agent in this State, within the meaning of the statute.

It can not, we think, be successfully contended, under all the facts and circumstances of this case, that the defendant corporation, while engaged generally in its aforesaid construction work and in the sale of its products in this State,

was not doing business and exercising its franchises therein within the meaning of the statute; and it was at such time that the defendant's employee, Ross Bickel, while at work upon the bridge aforesaid, sustained injuries that resulted in his death, to recover damages for which this suit is instituted.

The R. C. Hoffman & Co. has continuously since its incorporation in 1905 served the Pennsylvania Steel Co. as its exclusive agent in the transaction of its business in this State, and so far as the record discloses its agency agreement has at all times during the existence of such agency remained practically the same. It is now, and has been during the period of its agency, compensated for its services by commissions paid to it by the defendant company upon the entire amount of business done by such defendant company in this State. This was true when the defendant company was actually engaged in both the sale of its products and in the aforesaid construction work, and it is now true when it is claimed by the defendant company that its business within the State is confined to the sale of its products. At all times during the existence of such agency an office has been maintained in Maryland, upon the door of which appears a notice stating it to be the "Baltimore Office of the Pennsylvania Steel Co., R. C. Hoffman & Co., Inc., Southern Sales Agents," and the character of such agency is also further imparted to the public by like notice found upon the letterheads of the R. C. Hoffman & Co. used by it in its correspondence as such agent. It is true the record discloses that the rent of the office is paid by R. C. Hoffman & Co., but this fact in itself should not, we think, outweigh all the surrounding facts and circumsatnces which so strongly indicate that it is the office of the defendant corporation. The business of the defendant company in this State was large and lucrative, and as R. C. Hoffman & Co. was paid for its services by commissions upon the entire business done by the defendant company in this State, the fact that it was to pay the rent of the office may have been, and probably was, taken into consid-

eration in fixing and determining the compensation to be paid its agent.

After a thoughtful consideration of all the facts of this case, we are of the opinion that it is sufficiently shown that the defendant company, a foreign corporation, was doing business and exercising its franchises in this State at the time of the injuries sustained by Bickel which resulted in his death, and that it continued to do so and was so doing business and exercising its franchises in this State at the time of service of process upon its agent, R. C. Hoffman & Co. And we are likewise of the opinion that it may be properly inferred from the character of the agency, as established by the facts here produced, that R. C. Hoffman & Co., as agents of the defendant corporation in this State, had, at least, the implied authority to receive service of process.

There are other grounds stated in the motion upon which the Court below was asked to quash the return to the summons, but, in our opinion, upon none of them should the motion have been granted.

Therefore, the Court below, in our opinion, erred in granting the motion to quash the return to the summons. We will, therefore, reverse the order quashing the return and remand the case.

*Order reversed and case remanded, with costs to the appellants.*