## W. J. DICKEY & SONS, INC. *v.* STATE TAX COMMISSION OF MARYLAND

[No. 101, October Term, 1956.]

608

*Decided April 8, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and PRESCOTT, JJ.

*F. Fulton Bramble* and *C. Oliver Goldsmith,* with whom

were *Nicholas G. Penniman, III,* and *Barton, Wilmer, Bramble & Penniman* on the brief, for the appellant.

*Frank T. Gray, Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County affirming the action of the State Tax Commission in upholding assessments, made by the Comptroller, of corporate income taxes owed by the appellant for six different years, viz: 1946, 1949, 1950, 1951, 1952 and 1953.

The appellant, W. J. Dickey & Sons, Inc. (referred to below as "Dickey") is a Delaware corporation with its manufacturing business being carried on completely within the State of Maryland. Its entire sales, with the exception of a few sales direct to its Maryland employees, are handled by H. R. Leeds Woolen Sales Corporation (referred to below as "Leeds") with its principal place of business in New York City. Leeds, as direct selling agent of Dickey, solicits sales subject to the approval of Meinhard, Greeff & Co., Inc. (referred to below as "Meinhard"), Dickey's financial factor in New York.

The mechanics of selling may briefly be described as follows: Leeds solicits sales in various states and makes arrangements with the customer as to quantity of merchandise, time and method of delivery which is set out on a "Purchase Agreement and Order" form. This form is forwarded to Meinhard for credit approval. Upon approval by Meinhard, the "Purchase Agreement and Order" becomes binding upon the customer and Dickey. A copy with the approval is returned to Leeds who in turn informs the customer. A copy is sent to Dickey who manufactures the goods to order and ships them "f.o.b. Oella, Maryland."

Meinhard upon accepting the "Purchase Agreement and Order" becomes liable to Dickey for the purchase price less the usual trade discount and its commission. Meinhard collects from the customer and remits to Dickey who pays a sales commission to Leeds.

Dickey's name appears on the door of Leeds' office, in the New York telephone directory and on the forms used by Leeds and Meinhard.

The sole legal question presented here is whether or not Dickey is deriving income from business carried on without this State so as to be entitled to a tax exemption for such income.

For the years 1946, 1949 and 1950, the applicable statute is Code (1939), Article 81, Section 253, as amended, and for the years 1951, 1952 and 1953 the applicable statute is Code (1951), Article 81, Section 312. The differences in the statutes have no bearing on the present issue and we need only examine Code (1951), Article 81, Section 312, which provides:

> "The net income of a corporation (domestic or foreign) shall be allocated in the following manner:
> * * *
>
> (b) The remaining net income, hereinafter referred to as business income, shall be allocated to this State if the trade or business of the corporation is carried on wholly within this State, but if the trade or business of the corporation is carried on partly within and partly without this State so much of the business income of the corporation as is derived from or reasonably attributable to the trade or business of the corporation carried on within this State, shall be allocated to this State and any balance of the business income shall be allocated outside this State. * * *"

There have been no cases before this Court construing the words of this statute, and more in particular the words "trade or business carried on." If the activities of Leeds and Meinhard can be considered as those of Dickey, then clearly under the statute set out above the appellant must prevail.

The lower court examined the undisputed facts (a stipulation having been filed) in order to determine if Leeds or Meinhard have a master-servant relationship with Dickey. Both Leeds and Meinhard are distinct and separate corporate entities. They operate completely on their own, except

that Dickey sets the sale prices, refers customers to Leeds, and has the power to order Leeds not to accept or solicit sales orders from particular customers. On the other hand, Leeds is entirely independent in such matters as the hiring and firing of salesmen, the manner in which the salesmen operate, their supervision, location of branch offices and all other details with regard to the sales for Dickey. Meinhard is equally as independent in its capacity as financial factor. .. In the recent case of *Charles Freeland & Sons, Inc. v. Couplin,* 211 Md. 160, 169, 126 A. 2d 606, this Court said in part, quoting from *Sun Cab Co. v. Powell,* 196 Md. 572, 577, 77 A. 2d 783: "* * * Actually the decisive test in determining whether the relation of master and servant exists is whether the employer has the right to control and direct the servant in the performance of his work and in the manner in which the work is to be done." Certainly the facts in this case support the lower court's finding that Leeds and Meinhard are not "servants" but are independent contractors.

167 A. L. R. 943 *et seq.,* in an annotation entitled *"Taxation—Business Outside State",* thoroughly discusses the cases involving whether or not a corporation is carrying on its business wholly within the state in which is located its principal office and manufacturing activities. We refer below to only a few of the cases discussed therein.

*Irvine Co. v. McColgan,* 26 Cal. 2d 160, 157 P. 2d 847, 167 A. L. R. 934, recognized that a taxpayer cannot be deemed to be doing business outside the state so as to require an allocation of income where it merely sells its products outside the state through independent brokers or factors, even assuming them to be agents of the taxpayer.

In *Westby v. Bekkedal,* 172 Wis. 114, 178 N. W. 451, a Wisconsin partnership entered into an agreement with a New York partnership whereby the Wisconsin firm had exclusive control of the purchasing, storing, handling, and shipping of tobacco grown in Wisconsin, and the New York firm handled all the sales which were made outside of Wisconsin. The court rejected the argument that because the sales were made and the proceeds collected entirely without the State of Wisconsin, that all of the income was derived from busi-

ness transacted without the State of Wisconsin and therefore not taxable.

In the case of *Commonwealth v. Minds Coal Mining Corp.*, 360 Pa. 7, 60 A. 2d 14, the Supreme Court of Pennsylvania, in dealing with a statute somewhat similar to ours, said at 60 A. 2d 17: "If sales are negotiated or effected through an agency maintained by the taxpayer outside of this Commonwealth, they are not assignable to Pennsylvania; but if they are negotiated or effected by other means, as for example, by an independent contractor serving as a sales agent in another State, maintaining its own offices there, and having its own salesmen or sub-agents, they are assignable to Pennsylvania."

A like result was reached in *Young v. Bragalini*, 158 N. Y. S. 2d 466 (N. Y. App. Div., 3rd Dept.), where the question was whether or not income derived by a New York partnership, engaged in an insurance agency and brokerage business, from one enterprise in Texas and another in Brazil, engaged in like business, was subject to the New York tax on unincorporated businesses. The New York firm sought to avoid taxation of such income on the basis that it was derived from business carried on outside the State of New York. In each instance the enterprise was a legal entity separate from the New York partnership and was established as such for the purpose of complying with the laws of the jurisdiction in which it operated. The Texas enterprise was a partnership, every member of which was also a member of the New York firm, but no member of the New York firm who was not a resident of Texas was a member of the Texas partnership. The Texas firm apparently conceded that the New York firm was entitled to participate in the Texas firm's profits, and no action of major importance was taken by the Texas firm without the approval of the New York firm. The precise nature of the Brazilian enterprise is not clear, but its relationship to the New York firm would appear to have been similar to that of a subsidiary to a parent corporation. The Court held the New York State Tax Commission warranted in concluding that the New York partnership was not carrying on business in either Texas or Brazil, and hence that the in-

come derived by the New York firm from the enterprises there was not to be allocated under the New York tax statute to sources outside of that State.

The result in the *Young Case* seems to be in accord with the converse case of *People ex rel. Studebaker Corporation of America v. Gilchrist,* 244 N. Y. 114, 155 N. E. 68, in which the Court of Appeals of New York held that New York could not tax a parent corporation because of the presence in that State of its wholly owned subsidiaries.

See also the statement in 84 *C. J. S., Taxation,* Section 188, page 350, to the effect that a corporation is not carrying on business within a state by the sale of its products through independent contractors in the state.

Though there is an obvious resemblance between all cases involving the concept of doing business or conducting activities within a particular state, the problems are by no means identical in different types of cases.

Thus, in the recent case of *Topps Garment Mfg. Corp. v. State of Maryland,* 212 Md. 23, 128 A. 2d 595, the question was the sufficiency of the activity in Maryland by or on behalf of a foreign corporation to serve as a basis for enforcing an obligation to act as collecting agent for the Maryland Use Tax on sales made to Maryland customers. That case involved several Sections of Article 81 of the Code (1951) relating to the imposition of the use tax (Section 369), and the obligation of vendors engaging in business in this State to collect it (Section 371). Under the definitions contained in Sections 368 (b) and 368 (k), a vendor is one "engaging in the business of making sales in this State or elsewhere of tangible personal property * * * for use, storage or consumption within this State" and the term "Engaged in business in this State" includes "The having of any representative, agent, salesman, canvasser, or solicitor operating in this State for the purpose of selling, delivering, or the taking of orders for any tangible personal property." Under that statutory definition the fact that the solicitation of orders was done by agents of the vendor who were independent contractors, rather than agents who were servants, was held to be immaterial. Though their activities may have been intermittent,

they were found to have been, in total, regular, systematic and productive of a substantial flow of goods into Maryland; and the imposition of the obligation to collect the tax was upheld against challenges based upon the commerce clause of the Federal Constitution and upon the due process clause of the Fourteenth Amendment thereto, chiefly upon the authority of *General Trading Co. v. State Tax Commission,* 322 U. S. 335, and *International Shoe Co. v. Washington,* 326 U. S. 310. *Miller Bros. Co. v. Maryland,* 347 U. S. 340 (reversing 201 Md. 535, 95 A. 2d 286), was distinguished on the facts on the basis of the lesser contacts with this State there involved. The *Topps Garment Mfg. Corp. Case* turns upon the statutory definitions quoted, and' from the due process point of view upon "the nature and extent of the activities" in Maryland (212 Md. at 29). That is, it applies the same test for due process as that now recognized in cases involving amenability to suit.

In such cases the test to be applied has gone through a long process of development, which we shall not attempt to trace here. It has long been settled that if a corporation is "doing business" in a state within what may be called the conventional meaning of that term, there is no problem as to establishing amenability to suit. But that is no longer the limit of the state's jurisdiction for such a purpose. *International Shoe Co. v. Washington, supra; Compania De Astral v. Boston Metals Co.,* 205 Md. 237, 107 A. 2d 357, 108 A. 2d 372. Cases involving the question of what constitutes a sufficient basis for amenability to suit which hold certain activities not to be enough would seem very persuasive as showing that such activities were also not enough to call for an allocation of income to the place where those activities are carried on.

The appellant relies upon *Central of Georgia Ry. Co. v. Eichberg,* 107 Md. 363, 68 A. 690, and *State, Use of Bickel v. Pennsylvania Steel Co.,* 123 Md. 212, 91 A. 136, in which foreign corporations were held to be doing business in Maryland so as to be subject to suit in this State. In the *Pennsylvania Steel Co. Case,* the foreign corporation had been engaged in building a bridge in Maryland, and the suit

was brought to recover for the death of one of its employees who was killed while engaged in that work. The Company never appointed a resident agent in Maryland, as was required by statute. It claimed to have ceased doing business in Maryland before service of process was ultimately made on the Company through service on another corporation which acted as sales agent for it in Maryland and other States. This agent had, indeed, procured the contract for the construction of the bridge on which the fatal accident occurred. There was no question about the Pennsylvania Steel Company being engaged in business and exercising its franchises in Maryland when it was building the bridge, and this Court found the evidence inconclusive to show that it had "abandoned this State in respect to this branch of its business" (construction work) at the time of service being made on the sales agent. These factors were taken into consideration in upholding the service, and the case did not turn solely on the presence of a sales agent soliciting orders. In *Baden v. Washington Loan & Trust Co.,* 133 Md. 602, 105 A. 860, it was said (at 133 Md. 605-606) that service was upheld in the *Pennsylvania Steel Co. Case* "because the foreign corporation there concerned was engaged generally in this State in its construction work and in the sale of its products."

In the *Central of Georgia Ry. Co. Case* it appeared that at least a part of the salary of a joint agent of that carrier and another was paid by the Central of Georgia Railway.

On the other hand, there are several more recent cases reaching an opposite result. See *Stewart Fruit Co. v. Chicago, M. & St. P. R. R.,* 143 Md. 56, 121 A. 837; *M. J. Grove Lime Co. v. Wolfenden,* 171 Md. 299, 188 A. 794 (a Maryland local venue suit involving a similar principle); *Johns v. Bay State Abrasive Products Co.,* 89 F. Supp. 654 (D. Ct. Md.); and *Thomas v. Hudson Sales Corp.,* 204 Md. 450, 105 A. 2d 225. In the last mentioned case there were found to be sufficient activities in Maryland to sustain a suit against a foreign corporation, but no question of allocation of business or income to this State was involved and it would be difficult to show any readily determinable basis for such an allocation on the facts of that case. Cf. *Com-*

*pania De Astral v. Boston Metals Co., supra,* where amenability to suit was upheld, though the foreign corporation was concededly not "doing business" in Maryland.

In the instant case we have no statutory definition of "business carried on" within or outside this State, and in that respect our present problem differs from that in the *Topps Garment Mfg. Corp. Case,* where there was a comprehensive definition. Our cases on what constitutes "doing business" recognize that the mere solicitation of orders does not constitute "doing business" for the purpose of establishing amenability to suit. *M. J. Grove Lime Co. v. Wolfenden, supra; Davidson Transfer Co. v. Christian,* 197 Md. 392, 79 A. 2d 541 (another local venue case, in which the general rule was recognized but was held inapplicable); *Thomas v. Hudson Sales Corp., supra.* In the latter case it was said: "It has been repeatedly held that the mere soliciting and obtaining of orders within a state by an agent of a foreign corporation for goods to be shipped into such state to the purchaser, does not amount to 'doing business' within the state, such as to render the corporation subject to service of process therein." (204 Md. at 458, 105 A. 2d at 228).

Nor, we think, does the fact that orders procured by Leeds ripen into contracts binding upon Dickey when approved as to credit by Meinhard in New York indicate that Dickey is doing business in New York. In view of the fact that Meinhard determines whether or not an order shall be accepted and assumes the full credit risk, it would seem that Dickey had relinquished to Meinhard a usual function of manufacturers in most lines of business, rather than that it was itself carrying on business in New York.

It is difficult to lay down a hard and fast line to be adhered to in allocation of business or income cases. Where a corporation is itself conducting business in several states through branch offices or the like, there is a basis upon which the allocation of business or income to states where such offices are located is or may be required. *Hans Rees' Sons v. North Carolina,* 283 U. S. 123; cf. *Household Finance Corp. v. State Tax Comm.,* 212 Md. 80, 128 A. 2d 640. On the other hand, it appears that where there is simply solicitation

in other states by independent contractors, then the seller is not carrying on business in such other states and no allocation of business or income to such other states is to be made under statutes such as ours.

That view is supported, we think, by *Irvine Co. v. McColgan, Westby v. Bekkedal, Commonwealth v. Minds Coal Mining Corp.*, and *Young v. Bragalini*, all cited above, and by prior decisions of this Court as to what constitutes doing business. We are accordingly of the opinion that the order of the Circuit Court for Baltimore County was correct in affirming the action of the State Tax Commission which upheld assessments made by the Comptroller based upon a determination that all of the appellant's sales should be allocated to Maryland.

*Order affirmed, with costs.*