FELDMAN ET AL. *v.* THEW SHOVEL COMPANY

(Three Appeals in One Record)

[No. 12, September Term, 1957.]

388

*Decided October 23, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

Submitted on brief by *Franklin Goldstein* and *Burke, Gerber & Wilen* for Mr. Feldman, appellant.

*Robert D. Bartlett,* with whom was *A. Adgate Duer* on the brief, for Arundel Crane Service, Inc., appellant.

*Robert E. Coughlan, Jr.,* with whom were *Joel J. Hochman* and *J. Marshall Neel* on the brief, for Mr. Perrera, appellant.

*Herbert F. Murray,* with whom were *Clater W. Smith* and *Clark, Smith & Prendergast* on the brief, for the Thew Shovel Company, appellee.

COLLINS, J., delivered the opinion of the Court.

This case involves the question of whether a foreign corporation was "doing business" in Maryland, within the meaning of Code, 1951, Article 23, Section 88 (a).

On August 17, 1953, Sebastian Perrera was injured by the fall of a boom of a Lorain Mobile Crane owned and operated by Arundel Crane Service, Inc., (Arundel). Perrera originally instituted suit against Arundel in the Circuit Court for Anne Arundel County. There, Arundel endeavored to make the Thew Shovel Company, a body corporate, (Thew), a third party defendant on the alleged ground that the Lorain Crane had been purchased from Thew and had a latent defect not known to Arundel.

Service in the third party action in Anne Arundel County was made upon Freeland Equipment Company, Inc., (Freeland), a Maryland corporation of Baltimore, under the claim that Thew was doing business in Maryland through Freeland as its corporate agent. Thew then filed a motion to quash the summons and to dismiss the case against it for lack of jurisdiction. After hearing, the Circuit Court for Anne Arundel County granted Thew's motion and entered judgment of Non Pros in favor of Thew on the ground that it was a non-resident corporation not doing business in Maryland. An appeal from that judgment by Arundel was afterwards withdrawn.

Perrera then filed the present action in the Superior Court of Baltimore City against Arundel, Lorain Shovel and Crane, a body corporate, and Thew. David Feldman also filed in the same court a suit against Arundel, Lorain, and Thew for property damage arising out of the same accident. These suits were consolidated. Thew filed a motion to quash service and to dismiss the cases for lack of jurisdiction. By stipulation between the parties the proceedings in the former action in Anne Arundel County and the depositions of Thurl S. Freeland, President of Freeland, and Fred J. Broad, District Sales Manager for Thew in its Philadelphia territory, were admitted in evidence in the case. In the Perrera action Thew also urged that the judgment of Non Pros in the original suit filed by Perrera in Anne Arundel County was *res judicata*

of the present action. The Superior Court, after hearings in both cases, held that the attempted service was invalid because Thew was not doing business in Maryland. The present appeals by Feldman and Perrera, plaintiffs, and Arundel, defendant, the three appellants, against Lorain and Thew, defendants, appellees, are from the judgments of Non Pros entered on that ruling.

Thew, in its motion to quash, alleged that there was no such corporation as Lorain Shovel and Crane. No evidence was offered by the plaintiffs that such a corporation existed. The Non Pros judgments entered below were in favor of Thew alone. It therefore appears that Lorain is not a party to these appeals.

The facts, for the purposes of this case, follow. Thew is an Ohio corporation with its principal office in Lorain, Ohio. It manufactures heavy machinery such as cranes, power shovels, road machinery and sells under the trade name of "Lorain". For at least twenty-five years it has had a distributor's agreement with Freeland, whose office and store are at 1600 South Caton Avenue, Baltimore. The present contract, dated April 16, 1951, provides, among other things, that Freeland shall not be construed as the agent of Thew. None of the officers or employees of Freeland are compensated by Thew. Freeland's territory includes Maryland with the exception of Allegany and Garrett Counties, three counties in West Virginia, the two counties on the eastern shore of Virginia, and the District of Columbia. A Pittsburgh company is distributor for Thew in Allegany and Garrett Counties. Freeland is a contractor and dealer in industrial equipment and buys and sells contractors' and industrial equipment including power shovels, cranes and other equipment of that nature. It obtains such equipment from the manufacturers. Freeland takes orders for the equipment through its three salesmen and then buys this equipment and various parts at a standard discount from Thew. No employee of Thew sells equipment in Freeland's territory. Freeland makes out regular purchase orders on its own purchase forms, mails them to Thew in Ohio, either directly or through Mr. Broad, District Manager of Thew, at his home or office in Wayne, Pennsyl-

vania. The orders are made in the name of Freeland and accepted at Lorain, Ohio. Thew acknowledges receipt of the orders to Freeland from Ohio. Freeland sells each year from fifteen to twenty units of Thew equipment. The equipment is shipped by Thew directly to Freeland's customers. These customers take the equipment off flat cars, under the supervision of Freeland, and truck it to its destination. Freeland sends its servicemen to instruct the customers in the assembly of the equipment, how to operate it, and also services it with its own servicemen. Freeland is billed by Thew and Freeland bills the customer. Freeland takes the credit risk on the purchasers. Freeland acts as distributor for many companies other than Thew.

No office is maintained by Thew in Maryland and it has no personnel here. None of its officers or directors resides in Maryland. Thew is listed in the regular and classified advertising sections of the Baltimore telephone directory under the same telephone number as Freeland. This listing was started by Freeland about twenty-six years ago as a medium of advertising and Freeland has paid for this. Thew's District Manager did not know of this telephone listing. In Freeland's show window are signs "Lorain" on four plates which Freeland took out of its parts department. Freeland purchases parts from Thew which include these plates. Freeland orders circulars advertising Thew equipment from Thew and sends them out to prospective customers. Freeland is not supervised in any manner by Thew nor does Thew make any inspection of Freeland's books or business records. Thew's District Sales Manager comes to Maryland about twice a month to talk to the President of Freeland and give "pep talks" to its salesmen. Thew does no newspaper advertising in Maryland.

Mr. Broad's territory includes eastern Pennsylvania, southern New Jersey, Delaware, Maryland, District of Columbia, Virginia, and twelve counties in West Virginia. His duties are to act as liaison man between the distributors in his territory and Thew. He passes information to Freeland regarding change and design of equipment. Occasionally some of Freeland's purchase orders pass through Mr. Broad in Wayne,

Pennsylvania, where he edits them for errors in item numbers and price and sends them to Thew. He also sees prospective customers of Freeland with members of Freeland. If Thew receives an inquiry from Freeland's territory it is referred to Freeland.

Thew reserves the right to sell directly to the military departments of the Government. Sales to the Government are handled by Thew from an office which it maintains in Washington. If Government equipment breaks down in the vicinity of Washington, Freeland could be called to repair it. The Washington office maintains no personnel to service and take care of equipment.

The sales price of the motor crane involved in this case sold by Freeland to Arundel was $44,334.00 and $2,000.00 for extra equipment. Before purchasing, representatives of Arundel flew to Lorain, Ohio, in company with a representative of Freeland in the morning, viewed the equipment, and flew back that night. After the hoisting drum of the crane broke and the accident happened to Perrera, Freeland was notified. Freeland took the two broken parts of the drum and shipped them to Thew at Lorain. Later representatives of Arundel and Freeland went to Ohio to talk to personnel of Thew about the break in the drum. At that time the broken pieces of equipment had disappeared. This appears to be a very suspicious circumstance.

The parts of Code, 1951, Article 23, Section 88, relied on by the appellants, are: "(Suits Against Foreign Corporations.) (a) Every foreign corporation *doing* intrastate or interstate or foreign *business* in this State shall be subject to suit in this State by a resident of this State or a person who has a usual place of business in this State, (1) on any cause of action arising out of such business, and (2) on any cause of action arising outside of this State." (Italics supplied.)

The appellants rely primarily on the case of *Thomas v. Hudson Sales Corp.*, 204 Md. 450, 105 A. 2d 225. In that case this Court concluded that the supervision and control exercised by Hudson Sales through its representatives in Maryland was almost as complete as if the representatives of Hudson Sales in this State were the sales department of Hud-

son Motors for the sale of Hudson automobiles and parts. The facts of the instant case differ materially from those in that case. There, Hudson Sales' district manager resided in Maryland, spent most of his time here and was in frequent contact with local dealers by telephone giving information and advice. He solicited franchises for Hudson automobiles here and more or less controlled the awarding of such franchises. He solicited sales of new automobiles to dealers and contacted the dealers frequently at their places of business. There was also a service representative of Hudson living in Maryland who demonstrated to dealers and their employees new tools and equipment for Hudson cars and helped the dealers with repair problems. Part of the cost of participation by dealers in the annual automobile show in Baltimore was paid by Hudson Sales and it actively participated in these shows. It paid the costs of sales promotion meetings at the Belvedere Hotel in Baltimore twelve times a year. The dealers were instructed at these meetings what the company desired them to sell in order to take care of production of Hudson cars. The district manager contacted some of the dealers as often as once a week. They were required to keep on hand a definite number of new Hudson automobiles and a definite number of demonstrators and certain parts. Hudson automobiles were advertised extensively in the Baltimore newspapers. Hudson Sales passed upon all advertising by dealers, required them to pay into an advertising fund, and Hudson Sales handled and paid for certain features of advertising. The Hudson dealers sold only Hudson automobiles and parts. The dealers were dependent solely on their franchise from Hudson. With this recitation of facts it is very evident that the activities of Thew in this State by no means compare with those of Hudson Sales Corporation.

In *Wm. Barnes Hall, Inc. v. Flintkote Co.,* 139 F. Supp. 32, where a manufacturer of building materials was held to be doing business in Maryland, it did none of its manufacturing here, had no warehouse here. However, it employed two sales representatives here whose activities were held under the facts in that case to constitute not mere solicitation of business but "solicitation plus". In *W. J. Dickey v. State*

*Tax Commission,* 212 Md. 607, 131 A. 2d 277, it was stated that where there is simply solicitation in other states by independent contractors, the seller is not carrying on business in such other states. *Thomas v. Hudson Sales Corp., supra,* 458. In *Kahn v. Maico Co.,* 216 F. 2d 233, relied on by the appellants, it was held that the defendant not only controlled the business policies of the distributor, but also regulated the details of the business almost as completely as if the distributor had been an agent in all respects, and that the business was in effect done in defendant's name and that it was controlled by defendant.

In *International Shoe Co. v. State of Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 *A. L. R.* 1057, relied on by the appellants, the test applied was not essentially expressed in terms of whether or not the foreign corporation was doing business in the state. In *Compania De Astral v. Boston Metals Co.,* 205 Md. 237, 107 A. 2d 357, 108 A. 2d 372, it was held that a corporation might be held amenable to suit in Maryland under Section 88 (d) on a contract made here, even though the corporation was not doing business in this State. That subsection, which authorizes a suit in this State against a foreign corporation by a resident of Maryland or by a person having a usual place of business here "on any cause of action arising out of a contract made within this State or liability incurred for acts done within this State, whether or not such foreign corporation is doing or has done business in this State", is not involved in the instant case. Section 88 (a), which is founded upon "doing business" in Maryland, is the only statutory provision which is claimed to support the service upon Thew in the instant case. Section 88 (d) and the *Compania De Astral* case are, therefore, not applicable. The activities of Thew in Maryland differ greatly from the activities of Benguet Consolidated Mining Company in Ohio in the case of *Perkins v. Benguet Consolidated Mining Co.,* 342 U. S. 437, 72 S. Ct. 413, 96 L. Ed. 485, and the activities of Ford Motor Company in Maryland in the case of *La Porte Heinekamp Motor Co. v. Ford Motor Co.,* 24 F. 2d 861.

The facts in the instant case correspond very closely to

those in *Johns v. Bay State Abrasive Products Co.,* 89 F. Supp. 654, where the plaintiff was injured by a grinding wheel purchased from the Maryland distributor of the Bay State Company, a Massachusetts corporation, which was sued in the Federal Court in Maryland on the theory that it was doing business here. Bay State had no office in Maryland. It had no property here, other than that in transit to customers from outside the State. The sales promotion agent of Bay State, who resided outside of Maryland, visited here and also other nearby states. He spent about one-fifth of his time in Maryland. His duties were to promote sales of the company's products which he demonstrated to customers. He had no authority to accept orders which were usually sent directly to the principal office of the corporation in Massachusetts. In that case Judge Chesnut held that Bay State was not doing business in Maryland because, under the Maryland law, mere solicitation of orders is not sufficient to subject a foreign corporation to service of process under the theory that it was doing business here. See also *Ericksson v. Cartan Travel Bureau,* 109 F. Supp. 315.

In *Thomas v. Hudson Sales Corp., supra,* it was said at page 458: "It appears that manufacturers of automobiles and other manufacturers who have followed more or less the following pattern in foreign states have been held not to be 'doing business' in those foreign states. A foreign corporation which has its principal business in another state, sells its products to distributors outside of that state, and the products are shipped f.o.b. with drafts attached. A district superintendent is employed whose territory includes foreign states. He visits distributors and dealers and advises them how to sell the products, how to keep up their stock of goods, and selects new dealers subject to the approval of the company. All contracts are executed by an officer of the corporation outside of the foreign state, the district superintendent having no authority to finally ratify any contracts. Among cases so holding are *Holzer v. Dodge Bros.,* (1922), 233 N. Y. 216, 135 N. E. 268; *Zimmers v. Dodge Bros.,* (Dist. Ct., Northern Dist., Illinois, 1927), 21 F. 2d 152; *Hinchcliffe Motors, Inc. v. Willys-Overland Motors, Inc.,* (Dist. Ct., Mass.,

1939), 30 F. Supp. 580; *Johns v. Bay State Abrasive Products Co.,* (1950), 89 F. Supp. 654; *Harrison, et al. v. Robb Mfg. Co.,* (1953), 110 F. Supp. 848."

The activities of Thew in Maryland correspond almost exactly with the quotation in the above paragraph. Freeland's activities were merely those of the usual distributor for a foreign manufacturer. We are of opinion that Thew was not doing business in Maryland and that service of process against it was properly quashed by the trial judge.

With this finding it is unnecessary that we pass upon the question of *res judicata.*

*Judgments affirmed, with costs.*