# SUPERIOR COURT OF BALTIMORE CITY.

Filed May 29, 1928.

HENRY MARCUS & SON, INC., A BODY CORPORATE,

VS.

FARMERS & MERCHANTS BANK OF MARLINTON, WEST VIRGINIA, GARNISHEE OF H. KELMENSON.

*E. Walter Robinson* for plaintiff.

*Niles, Barton, Morrow & Yost* for defendants.

**FRANK, J.—**

The defendant, Kelmenson, has filed herein a motion to quash a writ of attachment laid in the hands of the Farmers and Merchants Bank of Marlinton, West Virginia, garnishee. The garnishee has appeared specially for the sole purpose of, and has filed a plea, contesting the jurisdiction of this Court. By agreement of counsel the motion to quash and the plea to the jurisdiction were tried together upon an agreed statement stipulating facts, as follows:

"The defendant, H. Kelmenson, is a non-resident of the State of Maryland, and a resident of the State of West Virginia.

"The Farmers and Merchants Bank of Marlinton, West Virginia, is a corporation of the State of West Virginia, with its banking house and principal office in the City of Marlinton, West Virginia. It has no office in the State of Maryland. It has no employees in the State of Maryland. It owns no real estate or chattels real in the State of Maryland. It has never owned any real estate or chattels real in the State of Maryland or any mortgages thereon, neither in its own name nor as agent for others. The following are all the facts bearing on the question as to whether or not the Farmers and Merchants Bank of Marlinton, West Virginia, is doing business in Maryland or is exercising any of its franchises in Maryland."

"The Farmers and Merchants Bank of Marlinton, West Virginia, owns no stock or interest in any corporation in the State of Maryland.

"That there is published annually by Rand McNally & Company a bankers' directory containing the names of banks through the United States and elsewhere; that such bankers' directory is widely circulated throughout the United States and elsewhere and is used by practically every large bank in the United States; that other similar directories are also published; that such directories contain, in addition to the name of the bank, such other information (within certain limitations) as each bank may care to publish; that each bank, with possibly a few exceptions, causes to be listed in such directories under the title "Principal Correspondents" the name of certain other banks; that the Farmers & Merchants Bank of Marlinton, West Virginia, has caused to be listed and published in such directories as its principal correspondents the following banks:

"American Exchange Irving Trust Company, New York City.

"Drovers and Mechanics' National Bank, Baltimore.

"State-Planters Bank and Trust Company, Richmond.

"Union Trust Company, Charleston.

"Fifth Third Union Trust Company, Cincinnati.

"The Farmers and Merchants Bank of Marlinton, West Virginia, regularly forwards by mail to the Drovers and Mechanics National Bank of Baltimore an average of eighty items per month, all of which are sent to the Drovers and Mechanics National Bank as deposits for the credit of the Farmers & Merchants Bank, said deposits averaging about twenty per month. The Drovers Bank serves the Farmers and Merchants Bank as a depositary bank for the section of the country between New York and Richmond, Virginia, and is used by them as a clearing house through which to forward checks received by the Farmers and Merchants Bank on deposit and drawn upon points in the Mid-Atlantic States. As soon as such items are cleared they are credited by the Drovers Bank to the Farmers and Merchants Bank, which then issues its drafts or checks on the Drovers against such balances. The Farmers and Merchants Bank of Marlinton, West Virginia, could conduct its business in another manner, but has elected to regularly conduct its business as above described. The advantage which is derived from conducting business in this manner is that the immediate credit which it receives by having deposits regularly made with the Drovers and Mechanics National Bank of Baltimore constitutes a great convenience and enables it to operate

with greater facility and on a larger scale than would be possible without such immediate credit, for the reason that a substantial portion of its deposits is represented by checks drawn in the territory served by the Drovers and Mechanics National Bank of Baltimore and particularly in Baltimore City and vicinity. In the absence of the arrangement aforesaid with the Drovers and Mechanics National Bank or with some other bank having its principal office in Baltimore City, collections would be delayed, a large part of the operating capital of the Farmers and Merchants Bank of Marlinton, West Virginia, would be beyond its control for immediate use, and its competitors would be able to serve their customers more efficiently than it could.

"A number of depositors of the said Farmers and Merchants Bank of Marlinton are engaged in the sale of merchandise shipped by them into Baltimore City and vicinity and in order that drafts and other negotiable paper deposited by such depositors in West Virginia with the said bank might be promptly collected, the aforesaid arrangement with the Drovers and Mechanics National Bank was made.

"The Farmers and Merchants Bank also forwards by mail to the Drovers and Mechanics National Bank any notes or other bills of exchange which are payable in Baltimore or other points nearby. The collection of such notes and drafts constitute a part of the regular business of the Drovers and Mechanics National Bank, and any such papers received for collection from the Farmers and Merchants Bank are handled precisely as any papers received for collection from any depositor are handled, i. e., they are presented for payment and if collected the proceeds are credited to the account of the Farmers and Merchants Bank of Marlinton. The collection of notes and bills of exchange constitutes a regular though a small part of the business between these two banks, and the most substantial part of said business consists in the deposit in the Drovers Bank of checks drawn upon points which can be cleared through Baltimore and the issuance of checks of the Farmers and Merchants Bank against the balances created by the collection of such checks."

It appears, therefore, that the plaintiff is seeking by a non-resident at-

tachment to hold as garnishee a bank of the State of West Virginia, its domicile, having no office and no employees of any kind in the State of Maryland. It is claimed, however, by the plaintiff that the course of dealing whereby the Drovers and Mechanics National Bank of Baltimore receives by mail from the garnishee checks, notes and drafts for collection in this State and contiguous territory, which when collected are placed to the credit of the garnishee, constitutes the Baltimore bank the agent for the garnishee bank to such a degree that the garnishee bank is regularly doing business in this State, and also renders the Baltimore bank the agent of the garnishee bank, competent to receive service of process sufficient to bind the garnishee bank.

Several questions are thus presented. In the view I take of this matter, it becomes necessary to decide only one of these questions, to wit: Can the garnishee bank be regarded as regularly doing business in the State of Maryland" or "regularly exercising some franchise" herein, within the provisions of Section 118 of Article 23 of the Annotated Code, so as to render it subject to legal process in this State? It was conceded at the argument by the plaintiff that if a West Virginia business corporation merely maintains a bank account with one of the Baltimore banks, to which it sends for collection and deposit to its credit checks and notes received from its customers, it could not be regarded as doing business in this State. In making this concession, the plaintiff was undoubtedly correct; otherwise, every individual, firm or corporation which maintains a bank account in some other State than that of its domicile must be held to be doing business in each of those States. (See reasoning of the Court in Stewart Fruit Co. vs. Railroad Co., 143 Md. 56, at page 67.)

It is, however, earnestly contended that the fact that the West Virginia corporation herein is a bank and that the Baltimore bank is designated as its correspondent bank and performs the functions above described creates a different situation than that which prevails in the case of a commercial non-resident. It is suggested that by the collection in Baltimore of checks and drafts, time is saved in making available to the West Virginia bank the proceeds of such collections, and,

to that extent, its capital and resources are enhanced. Conceding this argument to be sound, and that such an enhancement of the capital and advantage to the bank thus does accrue, and it is so stipulated in the agreed statement of facts, I still cannot see how the bank is benefited in any different manner or greater degree than is the commercial depositor whose checks and drafts are likewise thus made more immediately available and whose resources to that extent are likewise enhanced.

No authority has been cited to me on either side bearing upon the question of whether the mere maintenance of a bank account in another State, in which are collected and deposited by the depositary bank negotiable paper for the depsoitor has ever been held to be or not to be a doing of business in the State of the depositary bank. The contention made here, while most creditable to the originality and ingenuity of the counsel making it, is hurt—not helped—by this lack of precedent. The very fact that, in spite of the great multitude of instances in which such bank accounts have been maintained by non-residents, no adjudicated case has been found in which it was contended that the mere maintenance of such an account amounted to a doing of business, is a rather convincing argument that such a construction may not reasonably be put on such a course of dealing.

In State vs. Pennsylvania Steel Co., 123 Md. 218, the Court of Appeals used language which is quoted with approval at page 65 of Stewart Fruit Co. vs. Railroad Co., 143 Md., as follows:

"The difficulty in these cases is in determining what acts of the foreign corporation constitute 'doing business' in the State, so far as to render it liable to be used in such State. So far as we have been able to find, there has been no general definition of the term 'doing business' in the sense that we are now dealing with that term. *This question, it seems, must be largely determined upon the facts of each individual case, and so it must be determined in this case.*" (Italics supplied.)

The case now under consideration likewise must be largely determined upon its own facts. It has, therefore, not seemed desirable to discuss the numerous authorities upon the general

principles involved, as to which there is no dispute.

It is apparent in this case that the garnishee bank itself has never directly transacted any business in this State. It has, it is true, employed the Baltimore bank to collect for it checks and notes transmitted by it to that bank through the mails. That, however, is the regular business of the Baltimore bank, a business that it transacts every bank day, not only for the garnishee, but for each of the other of its numerous depositors and customers. In making the collections for the garnishee bank in this State, and those are the only transactions carried on in Maryland, the Baltimore bank is strictly carrying on its own regular business. The money actually collected by it does not become the property of the garnishee bank. The title thereto is and remains in the Baltimore bank. The relationship of debtor and creditor arises between the two banks, as soon as the collections are made. The Baltimore bank owes to the garnishee bank the aggregate amounts of such collections as they severally come into its possession.

The collection in a State by a foreign corporation of debts due it for goods sold or otherwise contracted for does not constitute doing, transacting, carrying on, or engaging in business within the meaning of a statute like the Maryland statute. The acceptance in a State of evidences of such debts or the taking of security therefor is likewise not within the meaning of such statutes. The same is true of the action of a corporation in a State in adjusting or compromising such debts.

14 A. C. J., p. 1278, Sec. 3984. Cases in notes 51 to 54.

In Hieston vs. National City Bank, 132 Md. 389, it was held that the institution of suit by a national bank in a Maryland Court is not a doing of business in this State.

The collection of claims through local attorneys does not constitute doing business in the State where the collections are thus made.

Moore vs. Freeman's National Bank, 92 N. C. 590; Bay City Iron Works vs. Reeves, 43 Tex. Civ. App. 254.

No sound reason appears for laying down a different rule where the collections are made by a local bank in the

course of the transaction of its regular business.

For these reasons, I hold that the motion to quash filed by the defendant must be granted, and that the plea to the jurisdiction filed by the garnishee must be sustained.